MANUFACTURERS' EQUIPMENT COMPANY v. CISCO CLAY & COAL COMPANY.

No. 5246.   Decided April 10, 1929.
(15 S. W., 2d Series, 609.)

*McGown & McGown* and *L. B. Otey,* for appellant.

The trustees and members of a joint stock association organized under and by virtue of a so-called Declaration of Trust Agreement, are partners, and the contracts of the company are prima facie the contracts of the partners, and the liability of the company upon said contracts is the liability of each and every of the partners. Gieselman v. Andreson, 242 S. W., 798; Martin v. Cummer Mfg. Co., 259 S. W., 240; Oil Well Supply Co. v. Texana Production Co., 265 S. W., 203; Shelton v. Montoya Oil & Gas Co., 292 S. W., 165; Thompson v. Schmitt, 274 S. W., 554.

Under the laws of this state a joint stock association is merely a partnership, and the trustees thereof are partners, and one partner having the authority to bind the partnership for the furtherance of the partnership business, the president of a joint stock association, being one of the trustees and one of the partners, has authority to bind the joint stock association and all of the trustees and shareholders thereof in the furtherance of the company's business. 20 R. C. L., pages 882–895; Dobie v. Southern Trading Co. of Texas, 193 S. W., 195, C. C. A., Ft. Worth; Frost v. Erath Cattle Co., 81 Texas, 505, 17 S. W., 52; McFaddin, Wiess & Kyle Land Co. v. Texas Rice Land Co., 253 S. W., 916; Martin v. Cummer Mfg. Co., 259 S. W., 240.

The president of a joint stock association, in the furtherance of the purposes for which said association was formed, has authority to bind said company unless the limitation upon his authority to bind is brought to the notice of the party with whom the president deals. Continental Supply Co. v. Adams, 272 S. W., 325; Martin v. Cummer Mfg. Co., 259 S. W., 240; Sealy Cotton Oil Mill Co. v. Bishop Mfg. Co., 235 S. W., 850.

A joint stock association organized under and by virtue of a Declaration of Trust which among other articles provides:

"All conveyances of real estate and all other instruments in writing hereunder shall be executed by the president or by one of the vice-presidents and duly attested by the secretary or assistant secretary with the official seal provided, however, that the authority of such officers to encumber, convey or dispose of any royalty rights of the trust shall be evidenced by a resolution duly passed by the board of trustees," gives the president of said joint stock association authority to execute any contract which is in furtherance of the business of the joint stock association and not affecting the royalty rights of the trust estate. 21 R. C. L., page 907; Martin v. Cummer Mfg. Co., 259 S. W., 240.

It will be noted that the latter portion of said article specifically provides that disposition of royalty rights shall be evidenced by a resolution. Does not this negative the idea that other simple contracts in line with the company's business shall also be evidenced by a resolution, or by the action of the board en bloc? It would seem that the doctrine of "expressio unius est exclusio alterius" applies.

*R. M. Rowland* and *A. J. Power,* for appellees.

While the Cisco Clay & Coal Company was in law a partnership, it was not like an ordinary partnership in respect to the authority of members or officers to bind the concern by contracts. In that particular it was like a corporation, and the contract of an officer made in its name was not binding upon it unless such contract was within the scope of the authority actually given to him in the declaration of trust, in the by-laws, or by the board of trustees, which was the governing body corresponding to the board of directors of a corporation. Willis v. Greiner, 26 S. W., 858; West Side Oil Co. v. McDorman, 244 S. W., 167; Spotswood v. Morris, 12 Idaho, 360, 6 L. R. A. (N. S.) 665.

If the Cisco Clay & Coal Company had been a corporation, its president, C. B. Pash, would not have had the inherent authority, by virtue of his office alone, to bind the company by a contract such as the one here in question. To bind the corporation by such a contract the president must have been authorized to make it, either by the terms of the charter or by the terms of the by-laws or by appropriate action taken by the directors. Fitzhugh v. Franco-Texas Land Co., 81 Texas, 306, 16 S. W., 1078; Standard Underground Cable Co. v. Southern Independent Telephone Co., 134. S. W., 429; El Fresnal Irrigated Land Co. v. Bank of Washington, 182 S. W., 701.

Mr. Judge LEDDY delivered the opinion of the Commission of Appeals, Section B.

As a basis for certified questions propounded the Court of Civil Appeals for the Second Supreme Judicial District presents the following certificate:

"The Manufacturers' Equipment Company, an Ohio corporation, without a permit to do business in this state, sued the Cisco Clay & Coal Company, a joint stock association, and C. B. Pash, T. B. Hoffer, J. A. Colliton, Peter Swenson, W. E. Smith, Evan Jones, and T. B. Williams, as trustees and stockholders of said Cisco Clay

& Coal Company, hereinafter called company to recover damages in the amount of $1250, with interest, on account of a breach of a written contract entered into by and between the plaintiff and the defendant. The plaintiff sought to hold the individual defendants named by virtue of their being members and trustees of said company. Plaintiff alleged that the said defendants were partners; that on or about September 1, 1921, said company, acting by and through its lawfully authorized president, C. B. Pash, entered into a contract with plaintiff, under the terms of which the said company, in consideration of plaintiff's preparing and furnishing it certain plans and blue prints for a paving brick plant, agreed to pay to it the sum of $1250 on December 1, 1921. That the plans and blue prints as in said contract provided were actually prepared and furnished by plaintiff. Plaintiff prayed for judgment for the full amount agreed to be paid in said contract against all of the defendants, both jointly and severally.

"Defendant answered by pleading a general demurrer and certain special exceptions to plaintiff's amended petition, because showing on its face that plaintiff was doing business in Texas without a permit, a general denial, a denial of the authority of C. B. Pash, the president of the Cisco Clay & Coal Company, to bind either the company or the individual defendants by the execution by him of the contract involved in this suit.

"Upon the trial, C. B. Pash, who it appears had died in the meantime, J. A. Colliton, Evan Jones and T. B. Williams, not having been served with citation, were, upon motion, dismissed from the suit and the cause proceeded to trial as against the other defendants named. The court overruled the general demurrer and special exceptions to plaintiff's amended petition, and the cause then proceeded to trial upon its merits, and a jury having been waived, the matters of fact as well as of law were submitted to the court. The case was submitted upon an agreed statement of facts signed by the parties, through their attorneys of record, and the court, after hearing the evidence, rendered judgment, first, that plaintiff was entitled to prosecute the suit; second, but that for the want of authority on the part of C. B. Pash the contract upon which the suit was based was not its contract nor binding upon the Cisco Clay & Coal Company, or upon the other defendants remaining in the suit. To the latter part of the judgment plaintiff excepted and gave notice of appeal.

"The agreed statement of facts, briefly stated, recites that the plaintiff is a foreign corporation, organized and existing under and by virtue of the laws of Ohio, and has not a permit to do business in the state of Texas and has never had. That the contract upon which plaintiff sued was executed by I. M. Justice on behalf of plaintiff and by C. B. Pash on behalf of the company. That at the time of the execution of said contract said C. B. Pash was the duly elected, qualified and acting president of said company; that other than being such president he was not authorized by the board of trustees of said company to execute said contract. That the plaintiff nor its agents had any knowledge of any limitation upon the authority of the said C. B. Pash, as president of said company, to enter into any contracts. That the certified copy of the declaration of trust under which the company was organized, together with the various amendments thereto, show that the trustees had the entire control of the management of said company, and that said Pash, as president, had no such control, except that he was a member of the board of trustees. It was further agreed that the plans and blue prints were made by said plaintiff at Dayton, Ohio, and that the first lot of plans were mailed from Dayton on September 24, 1921, and that the rest of the plans were actually delivered to said company by delivering the same to C. B. Pash, as president of said company, at Fort Worth, Texas. That T. B. Hoffer, Peter Swenson and W. E. Smith were, at the time of the signing of said contract by Pash, members and trustees of said company. That said company was not a corporation, but was organized under a declaration of trust. It was further agreed by and between the parties hereto that unless the execution of the contract upon which suit was filed constituted doing business in Texas, the only work performed in the State by plaintiff was that performed by said Justice, vice-president of plaintiff company, which was as follows: He spent parts of two days in Eastland County, Texas, taking measurements and securing data upon which to base the work in preparation of the plans and specifications called for in said contract. That the actual work, drawing and preparation of said plans and blue prints, was done at Dayton, Ohio. That the trustees of said company did not adopt any formal by-laws, but at all times faithfully followed the terms of the declaration of trust in conducting the business of the company. That said trustees held meetings from time to time as occasion required, and at such meetings all contracts proposed to be made by the company and all matters pertaining to its affairs were discussed and acted upon by

the trustees as a board. The trustees did not authorize the making of contracts for the company in any other way, unless the declaration of trust by its terms authorized the president to make the contract in question. That the trustees, other than C. B. Pash, did not know of or consent to the making of the contract herein sued upon, and the trustees did not at any time, by resolution, vote or other action, approve the making of said contract, either in advance or after it was made. The trustees never at any time constituted the president or any other officer a general manager of the company's business, but the management of such business was kept in the hands of the board of trustees, who in meeting assembled transacted all business except mere matters of routine. That the next meeting of said board of trustees after the signing by Pash of the contract sued upon was held in Fort Worth on September 22, 1921. Said Pash was present at said meeting, but did not mention the fact that he had made said contract, and the other trustees remained in ignorance of its existence until long afterward. If Pash had told about making said contract, the trustees would have passed a resolution or vote repudiating it and would have promptly notified the plaintiff of such repudiation. That the trustees, against whom judgment was obtained, never saw the plans or drawings made by plaintiff, and said company never used such plans or derived any benefit from them. The said plant in question was never constructed or even begun. Not long after the plans were sent to Pash the enterprise for which said company was organized was abandoned. Said company was insolvent at the time of such abandonment, and the individual defendants in this suit lost the sums of money they invested in the stock of said company. The defendant company had no funds on hand when Pash made said contract, and whether it would have ever had funds with which to pay for said plans depended upon future contingencies of an uncertain nature. The first notice the trustees other than Pash had of the contract now in suit, or of the existence of said plans, came to them after plaintiff had delivered the plans to Pash and had been unable to collect for them through correspondence with him. At the time the contract sued upon was made by Pash the defendant company did not maintain any office in Fort Worth, Texas, unless the following facts constituted the maintaining of such an office: J. A. Colliton, one of the trustees of said company, maintained in the Oil Operators' Building in Fort Worth offices consisting of several rooms, one of which was room 206; said Colliton maintained said offices for his own individual business and

paid all rents for said offices; said Colliton permitted C. B. Pash to stay as much as he cared to in said room 206, and said Pash received mail addressed to him at that place and conducted his correspondence, both in behalf of said company and in his own behalf, from said place; said company had no money with which to pay office rent and did not contract to pay any, and said Colliton made no charge for the privilege granted by him to said Pash as president of said company.

"It was further agreed that said plaintiff company had no knowledge of any limitation of the authority of said Pash to contract for or on behalf of said defendant company, and no knowledge of the fact that the other defendants did not know of and had not authorized the making of the contract sued upon. That said plaintiff company had no knowledge of the fact that said Colliton was allowing Pash to use one of his offices, free of rent, but had occasion to observe that said Pash was making his headquarters in room 206 of said suite, and did not know whether he or said company was paying anything for the use of the space in said room.

"The declaration of trust of said defendant company was made on June 30, 1920, by C. B. Pash, Evan Jones and T. B. Williams, of Eastland County, as trustees. Subsequently, the defendants who remained in the suit became interested in the enterprise. The declaration of trust provides as follows:

" 'No member of said company or owner or holder of this certificate as such shall have any authority, power or right whatsoever to do or transact any business whatsoever on behalf of or binding upon the company or any member thereof and no member of this company shall ever be personally liable for any debts, covenants, demands, contracts or torts of any kind of this company.' "

Said declaration further provides:

" 'The trustees shall annually elect a President, one or more Vice Presidents, a secretary, who may appoint one or more assistant secretaries, and a treasurer, and such other officers as the affairs of the trust estate may in their judgment, from time to time, require; these officers shall have such authority and perform such duties as may be defined by the trustees.'

"It was further provided that the trustees should adopt a common seal and cause the same to be used in the attestation on all title papers and such other instruments in writing which they deemed proper. That in all questions and matters pertaining to the trust involving the authority, powers, judgment and discretion of the trustees, the

decision of the trustees should be final and conclusive. That all conveyances of real estate and all other instruments in writing should be executed by the President, or by one of the Vice-Presidents, and duly attested by the secretary or assistant secretary with the official seal, provided that the authority of such officer to encumber, convey or dispose of any royalty rights of the trust should be evidenced by a resolution duly passed by the board of trustees.

"Plaintiff below alleged that the defendant company constituted a partnership, and that all of the defendants sued were partners. Defendant T. B. Hoffer filed a separate answer, and the only denial contained in said answer of partnership was a general denial. No special denial of the partnership was therein contained. In his affidavit to his answer he did not specifically deny partnership, but specially denied that C. B. Pash as president had authority, under the declaration of trust or articles of association of said company, to execute the contract in question. Peter Swenson and W. E. Smith in their answers did not specially deny the partnership alleged in plaintiff's pleadings, and no special denial of such a partnership was contained in the verification. The only special denial was as to paragraph eleven in the answer, which specially pleaded and denied that said alleged written contract was the act or contract of either the Cisco Clay & Coal Company or of Peter Swenson and W. E. Smith, and they denied that C. B. Pash was authorized under the declaration of trust of the defendant or by the board of trustees to enter into such a contract.

"In our original opinion, which will be sent with this certificate, we held that there was no special denial of partnership, and that in the absence of such special denial, under oath, the partnership should be taken as confessed, citing I. & G. N. Ry. Co. v. Tisdale, 74 Texas, 8, 11 S. W., 900, 4 L. R. A., 545; G. C. & S. F. Ry. Co. v. Edloff, 89 Texas, 454, 34 S. W., 414, 35 S. W., 144; Geiselman v. Andreson, 242 S. W., 798.

"We further held that under McCamey v. Hollister Oil Co., 241 S. W., 689, by this court, and Hollister Oil Co. v. McCamey, 115 Texas, 49, and Thompson v. Schmitt, 115 Texas, 53, the shareholders in a joint stock association were partners, and were bound by a contract entered into by the president of the company, within the apparent scope of his authority and for the benefit of the partnership. We cited 20 R. C. L., 882; 20 R. C. L., 885, sec. 97; Frost v. Erath Cattle Co., 81 Texas, 505, 17 S. W., 53, by the Supreme Court; Dockery v. Faulkner, 101 S. W., 510; Dobie v. Southern

Trading Co., 193 S. W., 195, by this court. We held that as between parties to a declaration of trust, by which a syndicate was organized, provisions in such declaration as to liabilities of members thereof are binding, but as to a creditor of such syndicate, who was not a party to the declaration, and who was ignorant of the fact that the partnership was acting thereunder, such provisions are not binding, citing Continental Supply Co. v. Adams, 272 S. W., 325; Sealy Oil Mill & Mfg. Co. v. Bishop Mfg. Co., 235 S. W., 850, by the Commission of Appeals.

"On appellee's motion for rehearing, it is urged that in our original opinion we were in conflict with two Texas cases, to-wit, Willis v. Greiner, 26 S. W., 858, by the Galveston Court of Civil Appeals, and West Side Oil Co. v. McDorman, 244 S. W., 167, by the Amarillo Court of Civil Appeals. It is urged that we are in conflict with Spotswood v. Morris, 12 Idaho, 360, 6 L. R. A., 665, and with the announcement in 20 R. C. L., 1075–1076, sec. 323. While we are not satisfied that we are in conflict with these cases, yet we have concluded that it is advisable to certify to your Honors the questions hereinafter set out, to-wit:

"1. In this case, in the absence of a sworn denial by the defendants that the Cisco Clay & Coal Company was a partnership, was this court in error in holding that said concern must be deemed a general and ordinary partnership?

"2. Under the circumstances shown by the agreed statement of facts in this case, was this court in error in holding that the making of the contract in question was within the apparent scope of the authority of C. B. Pash, as president of the Cisco Clay & Coal Company?

"3. It being an undisputed fact in this case that the Cisco Clay & Coal Company was an unincorporated joint stock company, operating under a written declaration of trust which vested the control of its affairs in a board of trustees, and it being a further fact that said board of trustees appointed C. B. Pash as president of said company and that he was also a member of said board of trustees, but was not expressly given by the board of trustees any authority to make contracts for said company, did the fact that he was the president of said company and a member of its board of trustees, confer upon him the power, or the apparent power, to bind the company and its members by the contract involved in this suit, under the facts shown in the agreed statement of facts herein given?"

Our law has always treated the ordinary commercial partnership relation as founded upon a voluntary contract. London Assur. Corp. v. Drennen, 116 U. S., 461, 29 L. Ed., 688. It does not force parties into partnerships against their will. It affords the right to choose those with whom a person desires to be associated and for whose acts he is willing to be bound. In the absence of an agreement to the contrary, the death of any member operates as a dissolution of the partnership. Either party may dissolve it at any time by notice of his intention to do so to all the other partners.

In view of these fixed principles applying to ordinary partnerships, the reason underlying the well established rule that each partner is bound by contracts made by the other when within the scope of the partnership business is readily discernible.

While joint stock companies are partnerships to the extent that they cannot limit the individual liability of their shareholders for the debts of the concern, yet their method of operation varies from ordinary commercial partnerships in such a way a different rule has been applied to such organizations in respect to their right to vest the contracting power of the partnership in a board of trustees or other governing body. In such organizations the death of a shareholder or partner does not dissolve the partnership nor does a transfer of the interest of a partner in the company operate as a dissolution thereof. Persons are thus brought into the partnership with whom the other partners have no acquaintance and about whom they possess no knowledge as to their honesty or business integrity. Neither are they afforded a matter of choice as to the persons who shall become members of the partnership. Operating under these conditions if such a concern must be bound by all contracts made by any one of its large membership, as in an ordinary partnership, the transaction of business through the medium of a joint stock company would be wholly impracticable if not altogether impossible.

It has been held by our courts, and we think such holding is based upon sound principles, that a joint stock company, while a partnership, may nevertheless, by its articles of organization, vest the sole control, direction and management of its affairs in a governing body, and, where such action is taken, it can only be bound when a contract is duly authorized by such body.

There is nothing in the case of Thompson v. Schmitt, 115 Texas, 53, 274 S. W., 554, decided by our Supreme Court, which in any way militates against this view. In fact, we think the distinction here announced was at least tacitly recognized in the opinion in the above

case, delivered by Justice Greenwood, as he quotes with seeming approval the doctrine laid down by the Galveston Court of Civil Appeals in Willis v. Greiner, 26 S. W., 859, wherein it was held:

"In ordinary partnerships any member may bind the firm by acts in the course of business, but in a joint stock company the management of the affairs of the company may be entrusted to officers or trustees."

It should be borne in mind that the holding in Thompson v. Schmitt, that joint stock companies could not legally limit the individual liability of the members for the debts of the company was based upon the proposition that such limitation was prohibited by the statutes of this state, which in effect prescribe the exclusive method by which a person may avail himself of a limited liability while a member of a partnership. There is no inhibition, either express or implied, in our statutes which would have the effect to deny a joint stock company from vesting sole control and management of its affairs in a duly constituted governing body.

While appellee was in law a partnership, it was unlike the ordinary partnership in regard to authority of its members or officers to bind the concern by contract. It could only be bound by an act of its president, if the contract was within the actual or apparent scope of the authority given to him by the terms of the declaration of trust, through by-laws or by proper action of its boards of trustees. Willis v. Greiner, 26 S. W., 858; West Side Oil Co. v. McDorman, 244 S. W., 167; Spotswood v. Morris, 12 Idaho, 360, 6 L. R. A., 665; 20 R. C. L., 1075–1076, Sec. 323.

It appears from facts recited in the certificate that appellee's president had not been invested with actual authority to make the contract involved, and the question arises, was such contract within the apparent scope of the authority of such president? A president of such a company, or a corporation for that matter, has no actual authority by virtue of his position alone to bind his company by contract. In order to bind a joint stock company or corporation by the contract of its president, he must be authorized to make it either by the statutes of this state, the terms of the by-laws, or by appropriate action taken by the directors, trustees or other governing body. Fitzhugh v. Franco-Texas Land Co., 81 Texas, 306, 16 S. W., 1078; Standard Underground Cable Co. v. Southern Independent Telephone Co., 134 S. W., 429; El Fresnal Irrigated Land Co. v. Bank of Washington, 182 S. W., 701. Neither does any apparent authority exist in such officer by virtue of his position. The cer-

tificate presented by the Court of Civil Appeals does not set forth any facts upon which a finding could be predicated that appellee's president was acting within the apparent scope of his authority in making the contract made the basis of appellant's cause of action.

Appellee cannot be held liable in this case because of a failure to deny under oath the partnership alleged. Such fact could not have been truthfully denied in this case. The effect of failing to file such denial was merely to admit the existence of a partnership. Such admission, however, should not be given the effect of denying appellee the right to conduct the business of such partnership through its duty constituted board of trustees. Appellee did in its pleading specifically deny under oath that its president was authorized to make the contract sued upon, and unless the proof disclosed such authority, either actual or apparent, it could not be held liable under the contract made by its president.

Questions 1 and 2 should be answered in the affirmative and question 3 in the negative, and we so recommend.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

*C. M. Cureton,* Chief Justice.