AMERADA PETROLEUM CORPORATION
v. MEXIA BIG POOL ROYALTY CO.
No. 11907.

Court of Civil Appeals of Texas.
San Antonio.

Feb. 2, 1949.

Rehearing Denied March 3, 1949.

Harry D. Page, Tulsa, Okl., John G. Stofer, Victoria, Renfro & Kilgore, Dallas, for appellant.

W. W. Mason, Mexia, for appellee.

W. O. MURRAY, Justice.

This is an appeal by Amerada Petroleum Corporation from a judgment of the District Court of Victoria County, Texas, decreeing that it take nothing as against the Mexia Big Pool Royalty Company, a joint stock association. The trial was before the court without the intervention of a jury. No findings of fact were requested and none were filed.

The Amerada Petroleum Corporation, as plaintiff below, filed its original petition on December 20, 1947, in which it alleged the name of the defendant herein to be the "Big Pool Royalty Corporation," a corporation doing business in the State of Texas, with principal offices in the Town of Mexia, Limestone County, Texas, with A. H. Berry as President thereof. Plaintiff further alleged that on July 10, 1946, defendant acted by and through its president, A. H. Berry, and agreed to give to plaintiff a paid-up oil and gas lease for a primary period of five years upon property situated in the County of Victoria, State of Texas, being all of Lots Nine to Twelve, inclusive, in Block 29 of the Bloomington Townsite. In pursuance of said agreement the said Big Pool Royalty Corporation accepted the sum of $20.00 as consideration for said lease, and the president of said corporation executed and delivered to Amerada Petroleum Corporation an oil, gas and mineral lease in words and figures fully set forth in the petition. Said lease was signed and duly acknowledged by A. H. Berry, president of Big Pool Royalty Corporation on July 10, 1946. (The lease was written by plaintiff.) After its execution by the president of said corporation said lease was delivered by the corporation to the plaintiff and the agreed consideration of $20.00 was paid to Big Pool Royalty Corporation.

After said lease was executed and delivered, Amerada Petroleum Corporation returned the lease to Big Pool Royalty Corporation with the request that the seal of the corporation be impressed thereon. Although often requested, the defendant, its agents, officers, servants and employees, have failed and refused to return said lease to plaintiff. Plaintiff prayed that the court establish the lease as a valid lease, and in the alternative for the specific performance of the written agreement as a contract to lease.

On April 19, 1948, plaintiff filed its first amended original petition in which it alleged that the defendant's correct name was Mexia Big Pool Royalty Company, an unincorporated joint stock association with principal offices in the Town of Mexia, Limestone County, Texas, and with A. H. Berry president thereof.

That on or about November 5, 1941, William F. Koch executed a warranty deed conveying to Big Pool Royalty Company, a corporation of Limestone County, Texas,

all of Lots 9 to 12, inclusive, in Block 29, of the Bloomington Townsite. At the time of the execution of said deed there was no such corporation as Big Pool Royalty Company, and the name of "Big Pool Royalty Company, a corporation" was inserted in the deed through a mistake of the parties, it being intended by the grantor and grantee that said property be conveyed to the Mexia Big Pool Royalty Company, a joint stock association.

Plaintiff then asserted the same cause of action against the Mexia Big Pool Royalty Company, a joint stock association, that it had asserted in the original petition against Big Pool Royalty Corporation.

On July 8, 1948, plaintiff filed its first supplemental petition in reply to the answer of defendant denying under oath that A. H. Berry had authority to execute the alleged lease. Plaintiff here set up great many facts leading up to the execution of the oil and gas lease by A. H. Berry, and further stated that it had no information of any limitation upon the authority of A. H. Berry as president of the Mexia Big Pool Royalty Company to execute the oil and gas lease upon the above described property. At the time said oil and gas lease was executed the Townsite of Bloomington was still "wildcat" territory, there being no production of oil or gas within said Townsite, and previous attempts to bring in oil or gas wells in the immediate vicinity had resulted in dry holes. That $20.00 was the reasonable cash market value of an oil and gas lease on the four lots, and that this sum was paid to and accepted by A. H. Berry. That although the articles of association and the declaration of trust executed by the organizers of the Mexia Big Pool Royalty Company provided for a meeting of the shareholders to be held every two years for the purpose of electing trustees of the association, there had been no regular or called meeting of the shareholders of the Mexia Big Pool Royalty Company since June 1, 1925, and prior to the filing of this suit. At the shareholders' meeting on June 1, 1925, J. W. McLendon, John G. Phillips, A. H. Berry, V. B. Gardner, A. B. Crider, Phil Karner and Walter Womack were elected trustees. At the time of the execution of

the oil and gas lease by A. H. Berry all the trustees except J. W. McLendon, J. G. Phillips and A. H. Berry were dead. At the trustees' meeting on June 1, 1925, following the meeting of the shareholders, A. H. Berry was duly elected president of the Mexia Big Pool Royalty Company, and John G. Phillips was elected secretary thereof, and said officers have remained in office since said date, there having been no other election of officers from June 1, 1925, until after plaintiff's original petition in this cause.

The property conveyed by the oil and gas lease was purchased from William F. Koch in 1941 upon a check of the Mexia Big Pool Royalty Company, signed by A. H. Berry as President. Koch executed a deed to Big Pool Royalty Company, a corporation, which was delivered to the Mexia Big Pool Royalty Company and accepted by it and placed of record with the County Clerk of Victoria County, Texas. Except for J. W. McLendon, Trustee, no officer or trustee of the Mexia Big Pool Royalty Company, and no shareholder thereof, knew or consented to the purchase of said lots by the said A. H. Berry.

Moreover, on March 30, 1944, A. H. Berry, President of Mexia Big Pool Royalty Company, executed an oil and gas lease to the British American Oil Producing Company of Tulsa, Oklahoma, covering land in Limestone County, Texas, providing for an annual delay rental of $7.31. No other officer or trustee or shareholder of Mexia Big Pool Royalty Company knew of said lease or assented thereto. However, the British American Oil Producing Company paid to Mexia Big Pool Royalty Company said sum of $7.31 on February 24, 1945, on February 25, 1946, and on February 20, 1947, which delayed rentals were accepted by Mexia Big Pool Royalty Company and it received the benefit thereof.

The plaintiff, acting upon the oil and gas lease which it originally received from A. H. Berry on July 10, 1946, and in the belief that it had the lots described therein under lease with a pooling clause, so that the Bloomington Townsite could be safely and properly developed for oil and gas, the Amerada Petroleum Corporation insti-

tuted a drilling block in the community of Bloomington with the result that a discovery well was brought in the early part of April, 1947.

That because of all the facts alleged defendant had clothed its president, A. H. Berry, with apparent authority to execute an oil and gas lease to the plaintiff, and said facts as hereinbefore alleged create an estoppel against defendant whereby defendant is estopped to deny the authority of A. H. Berry to contract for such oil and gas lease and to execute the same.

Appellant, in its brief, presents the three following contentions:

"(a) That A. H. Berry and J. W. McLendon had actual authority to make the plaintiff's lease or failing in this,

"(b) that since the Association knew and acquiesced in a course of conduct by A. H. Berry and J. W. McLendon, which created in the mind of Amerada's agent the impression that Berry and McLendon had actual authority to lease the property in question, the association would be bound upon the principle of apparent authority.

"(c) The conduct of John G. Phillips, officer and trustee of the defendant association, makes it particularly inequitable to deny the effectiveness of Amerada's lease because Phillips, with full knowledge of all the facts, chose to delay action until Amerada had completed the discovery well in the Bloomington Field, whereupon he sought to repudiate the lease."

As to appellant's first contention, it is apparent from the rather lengthy statement of the pleadings in this case that appellant has not plead anything with reference to the actual authority of J. W. McLendon to execute a lease on behalf of appellee, nor has it alleged that J. W. McLendon ever attempted to execute any lease to it. As to A. H. Berry, the allegation is not that he had actual authority to execute the lease, but, rather, that defendant was estopped to deny his authority because of the hardship which would result to appellant.

■ In its discussion of that point, appellant presents the contention that A. H. Berry and J. W. McLendon were acting as general managers for defendant with the acquiescence and consent of the share-holders and trustees of the defendant, and that as such general managers they had actual authority to execute the lease. This theory is not supported in any way by the pleadings. Furthermore, these two parties did not jointly attempt to make the lease, but the lease was signed solely by A. H. Berry as President of the Association. The evidence is not sufficient to show that either Berry or McLendon were acting as general managers of the corporation with the consent and acquiescence of the trustees and stockholders of the association. But even if there were evidence tending to establish this matter it would only present a question of fact for the trial court to decide, and in this instance the trial court has denied a recovery to appellant, and has, therefore, made an implied finding that Berry and McLendon were not acting as general managers of the association. We therefore conclude that there was neither pleading nor proof which entitled appellant to recover upon this theory, especially in view of the fact that the Articles of the Association provided that the property of the Association could only be conveyed by the unanimous consent of the board of trustees.

In Manufacturers Equipment Co. v. Cisco Clay & Coal Co., 118 Tex. 370, 15 S.W. 2d 609, 612, the Court, in speaking of the powers and responsibilities of officers and members of joint stock associations, operating under a declaration of trust similar to the one herein involved, had this to say:

"While appellee was in law a partnership, it was unlike the ordinary partnership in regard to authority of its members or officers to bind the concern by contract. It could only be bound by an act of its president, if the contract was within the actual or apparent scope of the authority given to him by the terms of the declaration of trust, through by-laws or by proper action of its board of trustees."

■ Appellant here contends that Berry and McLendon had by their acts assumed to act as general managers of appellee and that such conduct had been acquiesced in by the other trustees and the stockholders in such manner as to in fact constitute them the general managers of the association and thus, being general

managers of the association, they would be presumed to have actual authority to convey the real property belonging to the association. It occurs to us that even if Berry and McLendon had in fact been appointed general managers of appellee association by an order of the board of trustees they would still have no implied power to convey the real property of the association in the face of the provision in the declaration of trust that the real estate of the association could be transferred only with the unanimous consent of the trustees, which was admittedly not given in this case.

Appellant's second contention presents the theory of apparent authority on the part of Berry and McLendon to make the lease. As before stated, McLendon in no way joined in the making of the lease and so we can only consider the apparent authority of Berry to execute the lease. Apparent authority is based upon estoppel. In American Mortgage Corporation v. Spencer, Tex.Civ.App., 45 S.W.2d 301, 304, it is stated:

"A party dealing with an agent is bound at his peril to ascertain not only the fact of agency, but the extent of the agent's powers, and, in case either is controverted, the burden of proof is upon him to establish it. * * * Where, however, the purported agent has no authority in fact and the principal is sought to be held on the ground of apparent authority, the doctrine of estoppel is invoked."

See also: Lane v. Sullivan, Tex.Civ.App., 286 S.W. 541, and Wichita Frozen Food Lockers, Inc. v. National Cash Register Co., 142 Tex. 109, 176 S.W.2d 161. There is no estoppel shown here. It is quite apparent that at the time appellant instituted this suit and at the time it filed its amended petition it was of the opinion that appellee was a corporation and appellant was charged with knowledge of the law that an oil lease executed by the President of the Corporation was not valid unless there was impressed thereon the corporate seal. Article 1322, Vernon's Ann. Civ.Stats. Appellant was bound to have known, at the time it drilled the discovery well, that it did not have a valid lease upon Lots 9 to 12 in Block 29 of the Town of Bloomington. Appellant apparently did not discover or have any intimation that appellee was a joint stock association until appellee's answer was filed on June 9, 1948. The only fact alleged by appellant that might be a basis for estoppel was the execution on March 30, 1944, by A. H. Berry as President of Mexia Big Pool Royalty Company of an oil and gas lease to the British American Oil Production Company of Tulsa, Oklahoma, and the acceptance thereafter of the association of the annual delayed rentals. Appellant does not allege that at the time it drilled the discovery well at Bloomington, that it had any knowledege whatever of this lease, and neither does the proof so show. Furthermore, this one transaction by A. H. Berry as appellee's president could not of itself give rise to a presumption of his apparent authority to execute such leases. Lane v. Sullivan, Tex.Civ.App., 286 S.W. 541; National Cash Register Co. v. Wichita Frozen Food Lockers, Inc., Tex.Civ.App., 172 S.W.2d 781.

Appellant's third contention is that it is unfair for the association not to be bound by the alleged oil and gas lease, in view of the fact that they waited until after the discovery well had been drilled before they finally repudiated the lease. We can not agree with this contention. As above pointed out, appellant was of the opinion that appellee was a corporation and was charged with the knowledge of the provisions of Article 1327, Rev.Civ.Stats., which places the general management of the affairs of a corporation in the board of directors. They further knew that they did not have a valid lease executed by the President of the supposed Corporation, because they had discovered that there was no seal impressed upon the lease. With knowledge of these facts appellant proceeded to drill the discovery well and then after oil had been discovered in paying quantities on April 1, 1947, attempted, on April 9, 1947, to secure a legally executed lease. This contention is really based upon estoppel and, as above stated, estoppel is not shown here.

The judgment of the trial court is affirmed.