Hildegard Halley TEMPLETON,
Appellant,

v.

NOCONA HILLS OWNERS ASSOCIA-
TION, INC., Appellee.

No. 8478.

Court of Civil Appeals of Texas,
Texarkana.

Aug. 30, 1977.

Jack Connell, Bowie, for appellant.

Roger Williams, Nocona, for appellee.

CORNELIUS, Justice.

Appellant Hildegard Halley Templeton instituted this action complaining that she had been wrongfully discharged from employment in violation of her written contract with appellee Nocona Hills Owners Association, Inc. She alleged that appellee's president had signed the contract which agreed to employ her as club manager for a period of one year beginning July 1, 1975. Appellee defended on grounds that the instrument upon which the suit was brought was not a valid contract because it did not contain a date when it would be-

**536**

come effective, Nocona Hills Country Club was named as employer rather than Nocona Hills Owners Association, Inc., and because the president did not have authority to act for the corporation in that instance and the corporation had not accepted or ratified his act in doing so.

The case was tried to a jury. In response to special issues the jury found that (1) appellant and appellee entered into the employment contract; (2) the commencement date for the employment was July 1, 1975; (3) appellee discharged appellant without cause; and, (4) appellant was damaged in the sum of $7,450.00. The district court, however, sustained appellee's motion for judgment non obstante veredicto and entered a take nothing judgment. Appellant has presented six points of error which contend generally that the court erred in rendering judgment non obstante veredicto because the instrument in question had all the necessary attributes of a valid contract and was binding upon the appellee Owners Association.

■ To sustain the action of the district court in granting judgment non obstante veredicto we must find there was no evidence of probative force upon which the jury could have made one or more of its findings. *Burt v. Lochausen*, 151 Tex. 289, 249 S.W.2d 194 (1952); Tex.R.Civ.P. 301. It therefore becomes necessary to review the evidence.

The Nocona Hills Owners Association, Inc. is a corporation whose shareholders are persons who have purchased lots or homes in a twenty-seven hundred acre tract of land known as Nocona Hills Subdivision. The corporation also maintains and operates a country club at the subdivision. The facilities were initially constructed and operated by the land developer who conducted business under the name of Lake Nocona Acres, Inc. The appellee Owners Association took ownership and control of the common facilities from the developer on July 1, 1975. In June, prior to the take over, elections were held for officers and directors of the Owners Association. Seven directors were elected to take office on July 1, 1975. One of them was Preston Jameson, who was also elected president of the board. Eugene Frank Jones was appointed by the board of directors to serve as General Manager. Appellant was serving as manager of the country club at the time of the change in ownership. In June, shortly prior to the effective date of the take over, President Jameson approached appellant about remaining in her position. She consented but stated that she wanted a contract. Jameson replied that he would bring the matter before the board of directors. Subsequent conversation and negotiations occurred between Jameson and appellant. They had talked of a $1,000.00 per month salary, but after consulting the board of directors Jameson told appellant that the board would not agree to more than $850.00 per month. When appellant kept insisting upon a written contract, Jameson suggested that she "draw one up". On June 20, 1975, appellant had a secretary type the following agreement, following a standard form which had been used by the country club for another employee:

"Management Contract

THE STATE OF TEXAS

COUNTY OF MONTAGUE KNOW ALL MEN BY THESE PRESENTS:

THIS CONTRACT entered into this 1975, by and between NOCONA HILLS COUNTRY CLUB, hereinafter called Club, and HILDEGARD B. HALLEY, hereinafter call Manager,

WITNESSETH:

I.

Manager agrees to operate, maintain, and provide adequate management of the Nocona Hills Country Club.

"Management Contract—Continued

II.

Club agrees to compensate Manager on a monthly basis at $850.00, (Eight Hundred Fifty DOLLARS AND NO/100), for providing said management services, and an additional amount per month if private vehicle is used for business. Two (2) Weeks Paid vacation. One (1) Pay Raise 3 months from date of contract. One (1) Pay Raise 6 months from date of contract to be negotiated.

This Contract shall be for a term of one (1) year from date, and so long thereafter as parties hereto agree.

WITNESS OUT (sic) HANDS this the 1975.

NOCONA HILLS COUNTRY CLUB

Preston Jameson

/s/ Leon Jones /s/ Preston Jameson
 President Board of Governors

 /s/ Hildegard Halley
 Hildegard Halley 6-20-75"

---

At appellant's request, Jameson signed the contract on June 20th and requested Mr. Leon Jones to witness it. The testimony conflicts from this point on. Jameson testified he agreed to sign the contract to indicate his consent but that he told appellant that the contract would not be binding unless and until it was authorized by the board of directors. Appellant denied that she was so advised. On June 22, 1975, Jameson submitted the contract to the board of directors but it refused to authorize or accept it, voting only to give appellant a vote of confidence and inform her that her job (which had been on a month to month basis) was secure at her present salary of $750.00. The appellant had continued to work as club manager during the negotiations and she continued to do so after the change in ownership. Jameson testified that he told appellant of the board's refusal to agree to the contract. Appellant denied the fact. Nine days after the change over, appellant was discharged by the general manager for disloyalty. She was paid for her work from July 1 through July 9 at the rate of $750.00 per month. She brought suit to recover the amount she would have received had the written contract been honored.

■ The appellee denied under oath that the contract sued upon had been executed by its authority. See Tex.R.Civ.P. 93(h).

Appellant therefore had the burden to establish the authority of the officer to make the contract on behalf of the corporation. *In Re Westec Corporation,* 434 F.2d 195 (5th Cir. 1970); *Ennis Business Forms, Inc. v. Todd,* 523 S.W.2d 83 (Tex.Civ.App. Waco 1975, no writ); *Babicora Development Co. v. Edelman,* 54 S.W.2d 552 (Tex.Civ.App. El Paso 1932, writ dism'd); *Adkins-Polk Co. v. Pate,* 11 S.W.2d 654 (Tex.Civ.App. Texarkana 1928, no writ); 14 Tex.Jur.2d, Corporations, Sec. 354, p. 458; Hamilton, Business Organizations, Texas Practice, Vol. 20, Sec. 585, p. 52.

■ The authority of an officer to contract for a corporation may be actual or apparent. In Texas, by statute, the board of directors of a corporation, not its president, is charged generally with the duty of managing the corporation's affairs. Tex. Bus.Corp.Act Ann. art. 2.31. Consequently, actual authority of the president to contract on behalf of the corporation must be found either in specific statutes, in the organic law of the corporation, or in a delegation of authority from the board of directors formally expressed, or must be implied from the nature of his position or from custom or habit of doing business. *Manufacturers' Equipment Co. v. Cisco Clay & Coal Co.,* 118 Tex. 370, 15 S.W.2d 609 (1929); *Ennis v. Todd,* supra; Tex.Bus.Corp.Act Ann. art.

**538**

2.42; Hildebrand, Texas Corporations, Vol. 2, Sec. 640, p. 597; 14 Tex.Jur.2d, Corporations, Sec. 330, p. 429, et seq. As to express authority, there was no proof in this case of any of the provisions of the corporate charter or by-laws, and there was no attempt to prove that the board of directors or the shareholders had invested the president with any authority to make contracts on its behalf. See *In Re Westec Corporation*, supra. In fact, the only evidence concerning contracts on behalf of the corporation was Jameson's testimony that only the board could authorize them, and that the board refused to approve the one in question here. As to implied authority, the settled rule in Texas is that a corporation president, merely by virtue of his office, has no inherent power to bind the corporation except as to routine matters arising in the ordinary course of business. *Miles Realty Co. v. Dodson*, 8 S.W.2d 516 (Tex.Civ.App. Amarillo 1928, writ dism'd); *Leak v. Halaby Galleries*, 49 S.W.2d 858 (Tex.Civ.App. Dallas 1932, writ ref'd); *Nelms v. A & A Liquor Stores, Inc.*, 445 S.W.2d 256 (Tex.Civ.App. Eastland 1969, writ ref'd n. r. e.); 2 Model Bus.Corp.Act Ann., 2d, Sec. 50, p. 90; Hamilton, Business Organizations, Texas Practice, Vol. 20, Sec. 585, p. 52. The execution of an employment contract binding the corporation to employ a person in a managerial position for a period of one year could not be considered a matter in the ordinary and usual course of appellee's business. Compare *Leak v. Halaby Galleries*, supra. Especially is this true since the power to hire and discharge employees for appellee was vested in a general manager rather than in the president. Indeed, Jameson had not even taken office as president on June 20 when the contract was executed. Under the record in this case, we are impelled to the conclusion that appellant failed in her burden to establish that Mr. Jameson was invested with actual authority to make the contract sued upon.

 There was likewise a failure to produce any evidence that Jameson had apparent authority to make the contract. The doctrine of apparent authority is based on estoppel, and one seeking to charge a principal through the apparent authority of an agent must prove such conduct on the part of the *principal* as would lead a reasonably prudent person, using diligence and discretion, to suppose that the agent had the authority he purported to exercise. *Chastain v. Cooper & Reed*, 152 Tex. 322, 257 S.W.2d 422 (1953); *Brown v. Grayson Enterprises, Inc.*, 401 S.W.2d 653 (Tex.Civ.App. Dallas 1966, writ ref'd n. r. e.); *Almar-York Co. v. Fort Worth National Bank*, 374 S.W.2d 940 (Tex.Civ.App. Fort Worth 1964, writ ref'd n. r. e.); *Great American Casualty Co. v. Eichelberger*, 37 S.W.2d 1050 (Tex. Civ.App. Waco 1931, writ ref'd); Hamilton, Business Organizations, Texas Evidence, Vol. 20, Sec. 585, p. 52. The declaration or actions of the agent are not sufficient. *Great American Casualty Co. v. Eichelberger*, supra. The record here contains no evidence of any act on the part of the corporation's board of directors or other authorized person which would lead any reasonable person to believe that Mr. Jameson was invested with the power to execute, without approval of the board of directors, a year's employment contract.

 Appellant contends, however, that if the contract was not binding upon the corporation because not executed by its authority, either actual or apparent, it should nevertheless be held to have become enforceable by reason of the parties' partial performance thereof. Aside from the fact that such a ground of recovery was neither pleaded nor submitted to the jury, we cannot agree that partial performance will authorize a recovery for appellant. A partial performance is effective in some cases to establish ratification of an otherwise invalid contract, or to take a contract out of the operation of the statute of frauds, but the performance of work under a month to month employment arrangement will not bind an employer to an otherwise invalid contract for a specific term of employment unless circumstances amounting to ratification or estoppel are present. Such circumstances are not present here. Appellant was employed on a month to month basis. The evidence shows only that when her

contract was refused by the board she continued her usual employment until discharged. She was paid for the number of days she actually worked in July. No claim has been made for the additional days in that month. Under the circumstances, no further recovery was authorized.

 Concerning the date of the contract, we agree with appellant that parol evidence was admissible to supply the date when the employment was to begin, and that there was evidence from which the jury could find that such date was July 1, 1975. See 17 C.J.S. Contracts § 61, p. 731. However, because of the lack of proof as to the authority of Mr. Jameson to make the contract on behalf of the corporation, the trial court was correct in rendering judgment non obstante veredicto, and his judgment must be affirmed. *Great American Casualty Co. v. Eichelberger*, supra.

IT IS SO ORDERED.