**404**

GREAT NATIONAL LIFE INSURANCE COMPANY, formerly USLife Life Insurance Company of Texas, Appellant,

v.

B. N. ELLIOTT, Appellee.

No. 20083.

Court of Civil Appeals of Texas, Dallas.

Dec. 10, 1979.

Rehearing Denied Jan. 16, 1980.

Ernest E. Figari, Jr., Dallas, for appellant.

S. Stewart Frazer, Dallas, for appellee.

Before GUITTARD, C. J., and CARVER and HUMPHREYS, JJ.

CARVER, Justice.

Great National appeals from a judgment on a jury verdict in favor of Elliott for $12,500 loss of salary due to his early discharge on a one year employment agreement. We reverse and render because the record fails to support the jury's finding that Great National's senior vice-president had the authority to hire Elliott for a year.

The facts supporting the verdict, related by Elliott in his testimony, show that Elliott never spoke to anyone at Great National about the term of his employment except senior vice-president Donald Spear. The term of employment was not put into writing but was oral between Elliott and Spear. In their conversation on September 16, 1976, Elliott testified that Spear said, "We'll pay you $25,000, and we'll give you one year." As to Spear's authority from Great National to make this agreement, Elliott testified that, "Mr. Spear had led me to believe that he did *not* have the power or the authority and that it had to come from elsewhere." Nevertheless, Elliott further testified as follows:

> At that time, I didn't think he had the authority, but on September the 16th, I quickly determined that he did have the authority since he was the only person I had dealings with. I hadn't had any dealings with anyone else and all the arrangements were made through him.

On this evidence of Elliott, the trial court submitted an issue to the jury as to whether Spear was "authorized" by Great National to employ Elliott for one year and defined "express," "implied," and "apparent" authority. They jury answered, "We do." Neither "express" nor "implied" authority is relied upon by Elliott. Consequently, we limit our review to the question of whether there is any evidence supporting the "apparent authority" of Spear to agree on behalf of Great National to hire Elliott for one year.

Our supreme court provides us a standard to determine the existence of apparent authority in *Custom Leasing, Inc. v. Texas Bank and Trust Company of Dallas*, 516 S.W.2d 138, 144 (Tex.1974). In discussing the authority of one Lyles to act for one of the parties in that case, the court said: "Finally, the finding of 'apparent authority' must have resulted solely from evidence of the representations and conduct of Lyles, which, standing alone, is legally insufficient. Apparent authority is based on estoppel, and it must arise from words or conduct of the principal."

██ Elliott accepts this standard and urges that, because Spear exercised authority in a number of ways without dispute by Great National, he had "apparent authority" to engage Elliott for one year. Elliott relies upon these several incidents to support his claim of apparent authority: that Great National evidently paid for Elliott's trips to Dallas and New York, which were arranged on the "authority" of Spear; that Spear *said* he had authority to hire and fire field personnel; that Spear *said* he dictated the terms of Elliott's employment; that Spear *said* he considered himself the real boss at Great National; and that, later, when Spear was fired, it took the chairman of the board of a parent company to accomplish the firing instead of Great National's president. We cannot agree that these incidents meet the standard of *Custom Leasing*. Upon examination, we do not find that relationship between authority to arrange for trip expenses and authority to hire for a year which would create an estoppel. No estoppel arises to prevent the principal from denying the authority unless the same or similar exercise of apparent authority of the agent has occurred and the principal has acquiesced therein. The remainder of the incidents relied upon by appellee were neither acts of Great National nor acts of Spear in which Great National acquiesced but only *assertions* by Spear standing alone.

Appellee urges that the case of *Ford, Bacon and Davis v. Torrance*, 349 S.W.2d 113 (Tex.Civ.App.—Waco 1961, no writ), supports his argument, but we cannot agree. In *Ford* it was held that an assistant supervisor had "apparent authority" to hire Torrance for one year, but the facts of *Ford* differ from those here in that (1) the assistant supervisor had exercised similar authority with other employees (2) with the knowledge and acquiescence of the principal and (3) Torrance knew of and relied upon this prior action of principal and agent in accepting his own employment. In our case, Elliott has failed to show earlier, similar employment practices of Spear or Great National's knowledge or acquiescence therein, or even Elliott's own reliance on these earlier practices.

We find that our record invokes *Templeton v. Nocona Hills Owners Association, Inc.*, 555 S.W.2d 534 (Tex.Civ.App.—Texarkana 1977, no writ), in which the president of Nocona Hills hired Templeton for a year *in writing*. The corporation defended a suit to enforce the contract on the ground that the president lacked authority to bind the corporation to a contract of employment for a year. The court's opinion stated:

There was likewise a failure to produce any evidence that Jameson [*i. e.*, the president] had apparent authority to make the contract. The doctrine of apparent authority is based on estoppel, and one seeking to charge a principal through the apparent authority of an agent must prove such conduct on the part of the *principal* as would lead a reasonably prudent person, using diligence and discretion, to suppose that the agent had the authority he purported to exercise. * * * *The declaration or actions of the agent are not sufficient.* * * * The record here contains no evidence of any act on the part of the corporation's board of directors or other authorized person which would lead any reasonable person to believe that Mr. Jameson [*i. e.*, the president] was invested with the power to execute, without approval of the board of directors, a year's employment contract. [Emphasis added.]

555 S.W.2d at 538.

We conclude that our record fails to reflect any act or acts of Great National, its

board of directors, or any other authorized person from which it could be reasonably found that Great National had clothed Spear with apparent authority to offer Elliott employment for one year and which act or acts were known to and relied upon by Elliott in accepting employment for one year. Consequently, we reverse and render judgment in favor of Great National.