**ROBERT NANNEY CHEVROLET CO., Appellant,**

v.

**EVANS AND MOSES, Appellee.**

**No. 8451.**

Court of Civil Appeals of Texas, Beaumont.

May 8, 1980.

Phil Dunlap, Beaumont, for appellant.

Steven C. Barkley, Beaumont, for appellee.

KEITH, Justice.

Defendant below appeals from an adverse judgment based upon jury findings which awarded plaintiff a recovery of $2,000 upon a check signed by the president of the defendant corporation. We reverse and render judgment for the defendant for the reasons now to be stated.

Robert Nanney was a stockholder and president of the defendant corporation at all times material to this suit. The majority stockholder was James Austin and there was one other stockholder, Greg Austin, son of James. The three named individuals also constituted the Board of Directors of the corporation.

In April, 1978, the corporation was in financial distress and was indebted for thousands of dollars to banks and financing institutions which had loaned money to the corporation on the personal indorsement of James Austin. Austin, being concerned because of his personal financial exposure, apparently began steps to liquidate the corporation. Nanney then sought legal assistance from the plaintiff law firm to devise means of thwarting Austin in his efforts to liquidate the corporation. The dispute was finally settled and the details thereof are beyond the scope of this opinion.[1] Nanney then issued a check drawn upon a corporate bank account payable to the plaintiff law firm in the amount of $2,000. Although there were two lines for signatures on the face of the check, it was signed only by Nanney.

The bank returned the check unpaid, noting that two signatures were required. Evans and Moses then instituted this suit upon the check. The allegations were not overly explicit as shown by our quotation in the margin.[2]

Defendant denied under oath Nanney's authority to sign the check, averred that plaintiff should have known that Nanney alone was unauthorized to sign the check; that the check was given in payment of a personal debt of Nanney to plaintiff and that it was without consideration as to the corporation.

Upon the trial, bank records were offered showing that the corporate resolution on file required two signatures on all checks and the bank official testified that it was not authorized to pay on a single signature. The corporate by-laws provided that the Board of Directors "shall have the entire management of the business and affairs of the corporation."

Nanney did not testify but Austin, then president of the corporation, testified that Nanney had no authority from the corporation to hire plaintiff or to issue the check. Furthermore, according to Austin, Nanney knew that a countersignature was needed on the check.

The jury found: (1) Nanney was authorized to sign the check (2) which was supported by consideration; (3) Nanney had authority of the company to sign "the check in question without obtaining an authorized

---

1. We are advised that the successor corporation which prosecutes this appeal is now known as "Jim Austin Chevrolet Co." Both the appeal bond and the supersedeas bond are executed in the name of the successor corporation.

2. After identification of the parties, the allegations set out hereinafter were made: "III. On or about April 24, 1978, Defendant issued to Plaintiff a check in the amount of $2,000.00. Plaintiff attempted to negotiate this check, but was unable to do so as Defendant had instructed the Sour Lake State Bank not to honor the check. The check is attached below and is made a part of this petition for all purposes. [Photocopy of face of check appears at this point in the pleading.] Defendant is therefore indebted to Plaintiff in the amount of $2,000.00. IV. No payment either in part or in full has been make [sic] by Defendant to Plaintiff for this debt."

counter-signature"; and (4) failed to find that plaintiff knew or should have known of limitations upon the authority of Nanney to sign the check. The trial court overruled the defendant's motion for judgment non obstante veredicto.

It is Hornbook Law that a person acting on behalf of a corporation must derive his authority from the board of directors. *Tex. Bus.Corp.Act Ann. art. 2.31 (1956)*; *Fitzhugh v. Franco-Texan Land Co.*, 81 Tex. 306, 16 S.W. 1078, 1079 (1891); *Manufacturers' Equipment Co. v. Cisco Clay & Coal Co.*, 118 Tex. 370, 15 S.W.2d 609, 613 (1929); *Templeton v. Nocona Hills Owners Ass'n, Inc.*, 555 S.W.2d 534, 537 (Tex.Civ.App.— Texarkana 1977, no writ).

It was conclusively shown, from the corporate records read into evidence without objection, that authority to sign a check without a countersignature had not been granted to Nanney by the Board of Directors.

Plaintiff did not plead apparent authority; but, under our record, it would not have enhanced the right to recover. Chief Justice Cornelius in *Templeton v. Nocona Hills*, supra, used this language:

> "As to implied authority, the settled rule in Texas is that a corporation president, merely by virtue of his office, has no inherent power to bind the corporation except as to routine matters arising in the ordinary course of business." (citations omitted, 555 S.W.2d at 538)

See also Annotation, "Corporate President—Commercial Paper", *96 A.L.R.2d 549, 554 (1964)*.

■ Hiring of counsel in an attempt to thwart the will of the majority of the Board of Directors and the holders of the stock of the corporation is not, as a matter of law, a routine matter arising in the ordinary course of business.

We do not find it necessary to pass upon defendant's sophisticated theory that the provisions of Uniform Commercial Code—

Commercial Paper, *Tex.Bus. & Comm. Code Ann. Sec. 3.101, et seq. (1968)*, operate to preclude a recovery by plaintiff. It is sufficient to state that we have found, without contradiction in the evidence, that Nanney did not have either actual or apparent authority to bind the defendant corporation to the debt which he created and attempted to pay by the check.

We sustain defendant's points wherein it contends that there was no evidence to sustain the jury's findings as to Special Issues One and Three. In so doing, we have followed the rules laid down for our guidance in *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965), and its progeny. Thus, we are required to enter judgment reversing the judgment of the trial court and rendering judgment for the defendant unless we find merit to plaintiff's crosspoint, a matter to which we now turn.

■ Plaintiff's crosspoint, mistakenly labeled "counter point of error",[3] argues that the trial court erred in refusing the right to file a trial amendment "to seek recovery from Appellant for services rendered in the amount of $2,000.00." We note that the cause went to trial more than a year after plaintiff had filed the first amended original petition. No sound reason was advanced in the trial court for the delay in asserting any alternative claim or theory.

No written trial amendment was ever tendered for filing and, of course, there is no such instrument to be found in our record. In the absence of such a written pleading tendered for filing, a litigant cannot discharge his burden of showing an abuse of discretion. *Templeton v. Unigard Security Insurance Co.*, 551 S.W.2d 514 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.).

Even if we were to overlook the procedural impasse noted earlier, plaintiff has not shown an abuse of discretion. See the authorities cited and considered in *Fry v. Guillote*, 577 S.W.2d 346, 347–348 (Tex.Civ.

---

**3.** See *Jackson v. Ewton*, 411 S.W.2d 715 (Tex. 1967), and *Harris v. Texas Employers' Insurance Ass'n*, 447 S.W.2d 211, 215 (Tex.Civ.App. —Beaumont 1969, writ ref'd n.r.e.), for a discussion of the labeling of such points.

App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). Finding no merit to the crosspoint, it is overruled.

For the reasons herein set forth, the judgment of the trial court is reversed and judgment now rendered that the plaintiff take nothing.