**B. N. ELLIOTT, Petitioner,**

v.

**GREAT NATIONAL LIFE INSURANCE COMPANY, Respondent.**

**No. B–9194.**

Supreme Court of Texas.

Jan. 14, 1981.

Rehearing Denied Feb. 18, 1981.

S. Stewart Frazer, Dallas, for petitioner.

Hewett, Johnson, Swanson & Barbee, Ernest E. Figari, Jr., Dallas, for respondent.

BARROW, Justice.

B. N. Elliott brought this suit to recover the sum of $12,500 remaining unpaid on an alleged oral agreement of employment for a period of one year. Donald Spear, who was Senior Vice-President of Marketing for Great National Life Insurance Company, entered into the agreement with Elliott. The question presented is whether Spear was authorized by Great National to make the agreement. The trial court rendered

judgment on the jury verdict for Elliott.[1] The court of civil appeals reversed this judgment and rendered a take-nothing judgment for Great National after concluding that there was no evidence to support the jury finding as to Spear's authority. 592 S.W.2d 404. We reverse the judgment of the court of civil appeals and remand the cause to that court for consideration of other points raised by Great National.

It is well settled that in order to determine whether there is "no evidence" to support the jury finding as to Spear's authority, we must consider only the evidence and inferences from the evidence which support the jury finding and disregard all evidence and inferences to the contrary. *Stodghill, et al v. Texas Empl. Ins. Ass'n,* 582 S.W.2d 102 (Tex.1979); *Dodd v. Twin City Fire Ins. Co.,* 545 S.W.2d 766 (Tex. 1977). Upon considering the evidence in that light, we hold that the facts show some evidence of Spear's apparent authority to offer a one year contract of employment to Elliott.

Great National was a Texas corporation which was wholly owned by US Life Corporation, a New York-based corporation. Spear's primary responsibility at Great National was to add to the field vice-president staff. Pursuant to this delegated responsibility, Spear, who was located in the Dallas office, contacted Elliott in Atlanta, Georgia, and inquired as to his interest in a field vice-president's position with Great National.

Elliott twice flew to Dallas to interview with Great National. He also flew to New York City to attend a meeting, sponsored by Great National's parent company, of all the marketing people from the parent company's subsidiaries. Elliott believed that he was attending the meeting in order to meet the people who would make the decision as to his selection for a field vice-president's position. Each one of these trips was pursuant to Spear's request and authorization.

Great National paid for each of the trips. It also paid Elliott one-twelfth of the agreed annual salary for each of the six months Elliott worked for Great National.

During the series of interviews with Spear, Elliott requested that Great National allow him to remain in Atlanta. Spear testified in this regard as follows:

"Very early in our conversation, he [Elliott] indicated that he would like to remain there [Atlanta] ... and I spoke to my president about it and we declined to agree that Nick should live there."

Elliott testified that he first knew he would have to relocate to Dallas when he reported to work in the Dallas office on September 16, 1976. He testified as follows:

"Q. How did you find out, then, on September 16, that you did not have an agreement?

"A. Don [Spear] informed me at that time that we had not had any success at all in talking to New York and getting them to agree to leaving me remain in Atlanta and that I would have to move to Dallas."

The testimony of both Spear and Elliott provides evidence of a chain of communication which facilitated Great National's selection of Elliott as a field vice-president. Spear was expressly delegated to add employees such as Elliott. Spear and Elliott discussed the conditions of employment, and then Spear solicited a decision from the home office. When the decision concerning the conditions of employment was made, Spear communicated the decision to Elliott.

Great National did not limit the use of this chain of communication to a particular time or to a particular condition of employment. In fact, Elliott testified that he did not at any time discuss the terms of his employment with any employee of Great National other than Spear. It was this fact which led Elliott to believe that Spear had the authority to offer Elliott a one year term of employment:

---

1. The jury found that on September 16, 1976, Spear and Elliott entered into an oral agreement whereby Great National employed Elliott for a period of one year. The jury also found that Spear was authorized by Great National to employ Elliott. Included in the instruction with this issue was a definition of "apparent authority."

"Q. As a matter of fact, you testified in your deposition a year ago that you knew during the time of these discussions that Mr. Spear did not have the authority on behalf of Great National to guarantee you a one year term of employment? "A. At that time, I didn't think he had the authority, but on September the 16th, I quickly determined that he did have the authority since he was the only person I had had dealings with. I hadn't had any dealings with anyone else and all arrangements were made through him."

In *Chastain v. Cooper & Reed*, 152 Tex. 322, 257 S.W.2d 422, 427 (Tex.1953), this Court said:

"The doctrine of apparent authority is based on estoppel, and one seeking to charge a principal through the apparent authority of an agent to bind the principal must prove such conduct on the part of the principal as would lead a reasonably prudent person, using diligence and discretion, to suppose that the agent has the authority he purports to exercise. . . ."

*See also Douglass v. Panama, Inc.*, 504 S.W.2d 776 (Tex.1974).

Great National established a chain of communication by which it communicated with Elliott through Spear. In so doing, Great National permitted Spear to hold himself out as having the authority to convey Great National's offer of employment to Elliott, and therefore indicated to Elliott that Spear had the authority to communicate that offer. In this situation, we hold that there was more than a scintilla of evidence that Spear had the apparent authority to hire Elliott on behalf of Great National for a period of one year. Therefore, the holding of the court of civil appeals that there was no evidence to support the jury finding was erroneous. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex. 1974).

This error requires a reversal of the judgment of the court of civil appeals. Since Great National's brief in the court of civil appeals contained points not considered by that court, including factual points beyond this Court's jurisdiction, we remand the cause to the court of civil appeals. *Shriro Corp. v. Ward*, 570 S.W.2d 395 (Tex.1978); *Custom Leasing, Inc. v. Texas Bank & Tr. Co. of Dallas*, 491 S.W.2d 869 (Tex.1973).

The judgment of the court of civil appeals is reversed and the cause is remanded to that court.