James **HARRISON**, Clyde Gentle, Larry DeHaven and Tom Polonis, Appellants,

v.

The **CITY OF SAN ANTONIO** and the San Antonio Police Officers Association, Appellees.

No. 04–83–00523–CV.

Court of Appeals of Texas, San Antonio.

June 26, 1985.

Mayo J. Galindo, San Antonio, for appellants.

Jake Talley, Joseph E. Scuro, San Antonio, for appellees.

Before ESQUIVEL, BUTTS and REEVES, JJ.

REEVES, Justice.

This appeal concerns the construction of a collective bargaining agreement between the City of San Antonio and the San Antonio Police Officers Association, and the authority of the president of the Association to amend the agreement without the approval of the membership or its board of directors.

The appellants, plaintiffs below, are four members of the San Antonio Police Department who took an examination for the position of sergeant in the police department. They assert the examination deviated from the criteria established in the collective bargaining agreement.

The case was tried to the court and the trial judge found for the City and the police officers association; the four members bring this appeal.

The City has adopted the State Civil Service Act applicable to firemen and policemen, TEX.REV.CIV.STAT.ANN. art. 1269m (Vernon Supp.1985) and TEX.REV. CIV.STAT.ANN. art. 5154c–1 (Vernon Supp.1985), The Fire and Police Employee Relations Act, which grants the City and the police department the right to negotiate collective bargaining agreements. When a contract has been negotiated by representatives of the City and the Association, it is then approved by the City, and submitted to the membership of the Association for its approval.

The parties entered into a two-year agreement. This agreement, for the first time, contains in its section dealing with examination for promotions "An Assessment Center Examination." This provision provides, in part:

B. *Assessment Center Examination*

The Assessment Center Board shall consist of three (3) members as follows:
. . .

The Assessment Center Examination will include exercises related to the duties and responsibilities of the job classification in question and shall include as a minimum an in-basket exercise, a leaderless group discussion and a structured interview . . . .

Some months before the sergeant's examination, the City, the Association's president and several members of the board of directors of the Association met to consider the methods to be used in implementing the Assessment Center Examination. Dr. Terry Eisenburg, a psychologist, was retained to conduct the Assessment Center Examination. Dr. Eisenburg expressed dissatisfaction with the number of the members of the Assessment Center Board and the structured interview examination as provided for in the collective bargaining agreement. He felt that the number of assessors was inadequate and the structured interview was not as effective as an oral presentation.

After several conferences between the City and the president, they agreed to substitute the structured interview for the oral

presentation. This change was reached approximately two weeks before the examination but was never reduced to writing.

While no action was requested or obtained modifying the agreement as to the structured interview, an instrument titled "Memorandum of Agreement and Understanding" was signed by the president of the Association and the city manager. This memorandum of agreement and understanding amended Article 11, section 1B by increasing the membership of the Assessment Center Board from three to five members. The city manager's authorization was based on an ordinance passed by the city council of San Antonio. The president did not obtain specific authorization from the board of directors nor the membership of the San Antonio Police Officers Association.

Approximately fifty-five police officers took the written examination for sergeant. Appellants were among the twenty who qualified for the second phase of the examination, the Assessment Center Examination. The examination was conducted in two days; ten candidates took the exam each day.

The Assessment Center Examination was conducted in the following manner: five assessors and ten candidates were present in the same room during the examination, but only two assessors graded each candidate on each part of the examination. However, since the examination consisted of three parts, each assessor graded a part of the examination of all ten candidates. After all the candidates had completed the examination, the five assessors collaborated in establishing a candidate's grade.

The eligibility list for sergeant is established by ranking applicants in the following manner: by adding fifty percent (50%) of the written exam score and fifty percent (50%) of the Assessment Center score, plus one point for each year of service in the police department up to a maximum of ten points. For example, using a candidate with ten years service:

| | |
|---|---|
| Written Exam Score | 96 |
| Assessment Center Exam Score | 88 |
| Overall Exam Score | |
| Written | 48 |
| Assessment Center | 44 |
| Seniority Points | 10 |
| Total | 102 |

Appellants are located on the promotional eligibility list for police sergeant in the following numerical order: Tom R. Polonis (9), James M. Harrison (12), Clyde R. Gentle (13), Lawrence E. DeHaven (19).

Appellants allege fifteen points of error asserting there is no evidence or insufficient evidence:

1. To support a valid execution of the amendment changing the members of the Assessment Board from three to five and substituting the structured interview to an oral presentation because the president of the Association acted without the authority of the executive board or the Association's membership.

2. That there was legal consideration to support the amendment to the collective bargaining agreement.

3. That there was a written amendment to the collective bargaining agreement; this was in violation of the statute of frauds.

4. To prove compliance with the collective bargaining agreement, because the undisputed testimony evinces the five assessors failed to grade each of the twenty applicants on each phase of the oral Assessment Center Examination.

5. To prove compliance with the collective bargaining agreement because twenty applicants were examined in groups of ten, each group over a two day period in violation of TEX.REV.CIV.STAT.ANN. art. 1269m, § 14 D (Vernon Supp.1985), which requires all applicants to be given identical exams in the presence of each other.

## ALTERATIONS OF THE COLLECTIVE BARGAINING AGREEMENT

 The authority of a president to contract on behalf of a corporation must be found in the statutes, the corporate char-

ter, express authority from its Board of Directors, or by implication from the nature of the president's position, custom or habit of doing business. *Robert Nanney Chevrolet Co. v. Evans and Moses*, 601 S.W.2d 411, 413 (Tex.Civ.App.—Beaumont 1980, no writ); *Capital Bank v. American Eyewear, Inc.*, 597 S.W.2d 17, 20 (Tex.Civ.App.—Dallas 1980, no writ); *Templeton v. Nocona Hills Owners Association, Inc.*, 555 S.W.2d 534, 537 (Tex.Civ.App.—Texarkana 1977, no writ). A president of a corporation, merely by virtue of the office, has no inherent power to bind the corporation except as to routine matters arising in the ordinary course of business. *Templeton, supra*, at 538.

■ TEX.REV.CIV.STAT.ANN. art. 5154c-1, § 7(c) (Vernon Supp.1985) provides the association or the public employer may designate any person or persons to negotiate or bargain in its behalf.

The San Antonio Police Officers Association By-Laws, article 1, section 1, provides: "The president ... shall preside at all meetings, ... and shall have subject to the control of the Board of Directors the general management and direction of the affairs of the Association. He shall perform such other duties as may be consistent with this office."

The San Antonio Police Officers Association is incorporated under the laws of the State of Texas.[1] TEX.REV.CIV.STAT. ANN. art. 1396—9.10(A) provides:

Any action required by this Act to be taken at a meeting of the members or directors of a corporation, or any action which may be taken at a meeting of the members or directors or of any committee, may be taken without a meeting if a consent in writing, setting forth the action to be taken, shall be signed by all members entitled to vote with respect to the subject matter thereof, or all of the directors, or all of the members of the committee, as the case may be.

The president was not given written consent by the membership or the Board of Directors to amend the agreement.

A structured interview is an examination where a candidate is given three or four questions in advance then appears before a Board of Examiners, outside of the presence of the other candidates. The candidate orally answers the questions; each question usually takes four or five minutes, and, during that time, the candidate might respond to other inquiries emanating from the response to the original question. In contrast, an oral presentation is where the candidate taking the examination is given, in advance and in writing, several topics to be discussed before the examiners, but in the presence of the other candidates. They are asked to discuss their educational background, experience in the department, qualifications and how these qualifications would relate to the position they seek, and things of like nature. The topics are given to them about one hour prior to the presentation. Each candidate speaks extemporaneously for not over ten minutes, without interruptions or questions; his audience are his peers and the assessors.

Although the two examinations might accomplish the same purpose, we are of the opinion that the tests are different. Certainly the professionals dealing in this type of testing recognized the difference; Eisenberg sought and got the change.

It might be argued that the increasing of the assessment from three to five was a routine matter left to the discretion of the president. *Capital Bank v. American Eyewear, Inc.*, 597 S.W.2d at 20; *Templeton v. Nocona Hills Owners Association, Inc.*, 555 S.W.2d at 537. However, appellants make the additional argument that the changes in the contract were not supported by consideration. It is not necessary for us to address these contentions because we are of the opinion that approving the modification in the contract by substituting the

---

1. The San Antonio Police Department was incorporated pursuant to TEX.REV.CIV.STAT. ANN. art. 1302, subd. 2. This article was repealed in 1961 and in its stead TEX.REV.CIV. STAT.ANN. art. 1396–1.01 et seq. (Vernon 1980) Texas Non-Profit Corporation Act was enacted and is applicable to this case.

oral presentation for the structured interview was a deviation that required specific authority from the membership or, if authorized by the membership, the Board of Directors.

Appellees contend that Article XI, Section 1B of the agreement was intentionally drawn in order that amendments could be made without membership or board approval in the Assessment Center Examination. This section provides in pertinent part:

The City will consult with the Association on issues related to guidelines for administration of and evaluation of the Assessment Center procedure.

■ It is urged its purpose was to give flexibility to the agreement so that modifications could be made without formally amending the contract. Moreover, since the parties placed that interpretation on the agreement, we are urged to follow that interpretation. If the language in a contract is susceptible to different meanings, the court, to ascertain the true intentions of the parties, will consider the circumstances existing when the contract was executed, and would generally follow the interpretation of the parties to the contract. *Lone Star Gas Co. v. X-Ray Gas Co.*, 139 Tex. 546, 164 S.W.2d 504, 508 (Tex.1942). However, we note that not all parties to this suit adopt this interpretation—the appellants strenuously disagree.

■ The contract in question, before it was finalized, was submitted to the membership twice. The record is silent as to why the agreement was not approved the first time submitted, but it is an indication that the membership was exercising its right to be the ultimate authority as to the contents of the agreement. If the membership had intended to give authority to the president or the Board to change the testing procedure, without its approval, it seems to us the parties would have used

language more forceful than *consult*. Indeed, it would appear to us that the agreement would have specifically provided for discretion in the president or the board to change the tests or other procedures if they deemed it prudent.

■ The appellants contend that the agreement, as amended by the oral presentation, is unenforceable because it was not reduced to writing, in violation of the agreement and the statute of frauds.[2] We agree. Heretofore the contracts had been for one year, but the one under consideration is for a two-year period.

■ Article XXXIII, section 1, "Stability of Agreement," of the contract states:

No agreement, understanding, alteration or variation of the Agreement, terms of provisions herein contained shall bind the parties unless made and executed in writing by the parties hereto. The failure of the City or the employees to insist in any one or more instance, upon performance of any of the terms or conditions of this Agreement shall not be considered as a waiver or relinquishment of the right of the City or the employees to future performance of any such term or condition, and the obligations of the City and the employees to such future performance shall continue in full force and effect.

A written agreement coming within the provisions of the statute of frauds may not be orally modified. *Michael v. Busby*, 139 Tex. 278, 162 S.W.2d 662, 664 (Tex.1942); *Foster v. Mutual Savings Association*, 602 S.W.2d 98, 100 (Tex.Civ.App.—Fort Worth 1980, no writ).

■ Appellants also assert that the Assessment Center Examination was conducted in violation of the agreement. The contract provides:

A minimum score of 70% as determined by the Board as a whole on the composite factors evaluated by the Board on a con-

---

**2.** TEX.BUS. & COM.CODE ANN. § 26.01(a) (Vernon 1968):

A promise or agreement described in Subsection (b) [an agreement which is not to be performed within one year from the date of making the agreement] of this section is not enforceable unless the promise or agreement, or memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

sensus basis shall be required to pass the Assessment Center Examination.

As discussed, the oral examination was conducted over a two day period with all assessors present, two assessors grading a candidate on each phase but each grading at least a part of each candidate's examination. The "board as a whole" did consider each candidate and did collectively reach a decision as to the score of each candidate. We find no merit in this allegation by the appellants.

■ Lastly, appellants contend that the contract was conducted in violation of TEX. REV.CIV.STAT.ANN. art. 1269m, § 14 D (Vernon 1963) which provides: "All applicants shall be given an identical examination in the presence of each other...." It is uncontroverted that the examination was given over a period of two days, one-half of the class taking it one day and the other half taking it the next day. Appellees respond that this portion of the statute has no application since the parties specifically provided as follows:

> In the event that any provision of this Agreement conflicts or is inconsistent with any provision of Article 1269M, Revised Civil Statutes of Texas, this Agreement shall prevail notwithstanding any such provision of Article 1269M.

TEX.REV.CIV.STAT.ANN. art. 5154c–1, § 20(b) (Vernon Supp.1985) provides that a collective bargaining agreement made in compliance to the Act takes precedence over state or local Civil Service provisions whenever the collective bargaining contract so provides. Otherwise, article 1269m, section 14 D prevails. The fact that the contract calls for an oral Assessment Center Examination does not in and of itself mean that it should be conducted over an extended period of time. There is no specific provision in the agreement providing for the examination to be taken over a period of two days. Consequently, as article 1269m controls, we are of the opinion that the agreement is in violation of the provisions of the article.

## CONTENTION OF RATIFICATION OR ESTOPPEL

Appellees contend the appellants, in submitting to the examination, ratified any changes in the agreement and are estopped to bring this action. They also contend that prior presidents executed contract modifications without approval of the membership or the Board of Directors.

Examinations for promotion in the San Antonio Police Department are not given at regular intervals; sometimes one-to-two years elapse between examinations. Appellants learned of the change in the examination procedures immediately before the examination was given. The evidence as to past presidents' executing modifications in the agreement came from the current president. He testified, over objection as to relevancy, to modifications he had made earlier and of modifications made by two prior presidents. In urging its admissibility appellees' attorney stated that it was being offered for the purpose of showing the president believed he had the power and authority.

Appellants contest these theories because they were not pled nor tried by implication. Appellees went to trial on a general denial. TEX.R.CIV.P. 67 provides, in pertinent part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. In such case, such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made by leave of court ... but failure so to amend shall not affect the result of the trial of these issues; ...

■ The doctrine of implied consent is invoked only where the issues have been fully developed. *Watts v. Watts*, 563 S.W.2d 314, 316 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.).

■ The purpose of Rule 67 is to require the pleader to inform the opposition of the specific grounds which will be relied

upon at the time of the trial. As stated in *Jay Fikes & Associates, d/b/a King's Park Apartments v. Walton,* 578 S.W.2d 885, 889 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.):

> That rule does sanction an unpleaded issue to be treated as raised in the pleadings when it is tried by express or implied consent; but, the rule is intended to cover the exceptional case where it clearly appears from the record as a whole that the parties tried the unpleaded issue. It is not intended to establish a general rule of practice and should be applied with care and in no event in a doubtful situation.

■ We are of the opinion that these issues were not tried by implied consent.

■ The issues of ratification and estoppel were never fully developed. The testimony of the president which might conceivably be related to these issues was limited in its admission into evidence—it went only to the president's belief as to the extent of his authority. Thus, there could be no trial by consent since that evidence was relevant to other issues that were raised by the pleadings. *Wendell v. Central Power and Light Co.,* 677 S.W.2d 610, 617 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). More important, the appellants were never alerted to these defenses by a request for a trial amendment.

The judgment of the trial court is reversed. We hold that the Assessment Center Examination was given in violation of the collective bargaining agreement. The examination is set aside. It is ordered that the Assessment Center Examination be given in accordance with the original agreement of the parties or an appropriately amended version of such.

BUTTS, Justice, dissenting.

I respectfully dissent.

Whether the president of the police association, after consulting with the City, could modify one-third of the second part of the two-part examination for promotion to sergeant [and lieutenant, captain, and deputy chief] without the written approval of the membership of the association is the real question.

The examination is divided into two parts: written and oral, the oral part consisting of review of responsibilities of the particular job classification (this part is not explained in detail and could consist of any number of "surprise" questions), a group discussion, and last, the portion which is under attack ... formerly a structured interview ... now changed to an extemporaneous presentation on a given subject assigned one hour before.

Thus, while presentation remained oral in the last one-third of the examination at the second phase, the manner of presentation was amended. No complaint is made of the written phase of the examination. The three-part second phase is not administered until after the first part. When a candidate passes the written test, that person may take the second test (oral). Five days after the written examination, the Assessment Center Examination date is posted. Each half is valued at fifty percent, and each year of service earns an additional one point up to ten years.

It is significant that a classroom orientation period concerning the Assessment Center process is given prior to the oral phase. All candidates are given the opportunity to attend the orientation.

It is my belief that under the circumstances as outlined above, the change in the manner of only one part of the oral examination may be termed "routine." *See Templeton v. Nocona Hills Owners Association, Inc.,* 555 S.W.2d 534, 538 (Tex.Civ.App.—Texarkana 1977, no writ).

The following provision appears in the examination procedures section of the collective bargaining agreement:

> The City will consult with the Association on issues related to guidelines for administration of and evaluation of the Assessment Center procedure.

This is appropriate because the City has a great stake in assuring its citizens that its police officers meet certain high standards.

I would find this provision means the president of the association, after consultation as in the present case, impliedly retains the power to modify testing procedure in a routine way.

The majority's disposition in this case would set aside the examination for all participants. What happens to those individuals who did pass the examination and were promoted? Because this seems to me to be an act of the president which is authorized, I would affirm the judgment.