Ophelia **PRITCHARD**, Administratrix of the Estate of Willie Alyce Snow, Deceased, Appellant,

v.

Billy Earl **SNOW**, Administrator of the Estate of Jack Snow, Deceased, Appellee.

No. 16546.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 13, 1975.

Rehearing Denied Dec. 11, 1975.

Hugh F. King, Fort Worth, for appellant.

Kendall, Randle, Finch & Osborn, Gaynor Kendall, Austin, for appellee.

EVANS, Justice.

The basic question for determination in this case is whether proceeds from a life insurance policy are community or separate property. This determination requires our construction of the simultaneous death provisions of Section 47, Texas Probate Code, as amended in 1965.

Jack Snow and Willie Alyce Snow, husband and wife, died as the result of an automobile accident on September 2, 1973, and there is no direct evidence that they died other than simultaneously. This suit was brought by the administratrix of the wife's estate against the administrator of the husband's estate to recover one-half of the net proceeds of a life insurance policy on the life of the husband, which policy the husband had acquired prior to marriage. The case was tried to the court without a jury upon stipulation of facts and the trial court rendered take-nothing judgment in favor of the husband's estate. We affirm.

During their marriage, and at the time of their death, the Snows were residents of Texas. No children were born of their marriage and both died intestate.

In 1958, during a prior marriage to Thelma Leota Snow, Jack Snow had acquired an ordinary life insurance policy on his life from Southwestern Life Insurance Company in the amount of $10,000.00 with double indemnity payment provisions in the event of his accidental death. At the time this policy was acquired, Thelma Leota Snow was designated primary beneficiary and Jack Snow's daughter was designated secondary beneficiary. Jack and Thelma Snow were divorced in 1961 and the following year Jack Snow changed the beneficiary designation under the policy to his brother, Billy Earl Snow and his sister-in-law, Laura N. Snow, respectively, as primary and secondary beneficiaries.

On December 29, 1965, Jack and Willie Alyce Snow were married and on July 22, 1970, by endorsement, the beneficiary designation was changed to Willie Alyce Snow with no contingent or secondary beneficiary

being designated. Under the printed provisions of the policy the proceeds were payable to the insured's estate in the event he was not survived by his wife, Willie Alyce Snow. No change was thereafter made in the beneficiary designation and Willie Alyce Snow was the designated beneficiary of the policy at the time of the parties' death.

Fixed premiums on the policy were paid monthly by Jack Snow in the amount of $24.04 each, and there is no evidence that Jack Snow had any source of income from his separate estate after his marriage to Willie Alyce Snow. He did earn wages from regular employment during their marriage. On August 27, 1973, six days prior to the death of the parties, a loan in the amount of $2,831.12 was made against the policy and the proceeds were deposited in a joint bank account of the parties.

The evidence established that two other life insurance policies had been issued on the life of Jack Snow. In one he named his wife, Willie Alyce, as primary beneficiary and his brother as secondary beneficiary; in the other he named his wife, Willie Alyce, as sole beneficiary. One policy on the life of Willie Alyce Snow designated her husband, Jack Snow, as primary beneficiary and her brother-in-law, Billy E. Snow, as secondary beneficiary. The proceeds of those policies are not in dispute.

The trial court concluded that since the Southwestern Life Insurance policy had been acquired by Jack Snow prior to his marriage to Willie Alyce Snow, it belonged to his separate estate at the time of his death and in consequence his estate was the legal owner of the policy and entitled to the proceeds thereof.

In her first two points of error appellant asserts the trial court erred in this conclusion and in construing Subsection 47(b) of the Texas Probate Code as being applicable to life insurance proceeds only if it can be proved that the policy was owned by the community estate.

Appellant relies principally upon *Sherman v. Roe*, 153 Tex. 1, 262 S.W.2d 393 (1953). In that case, which was decided prior to the adoption of the Texas Simultaneous Death Act, there existed no presumption of survivorship even though there was no evidence that the parties died other than simultaneously. A certificate of insurance under a group life insurance policy on the life of the husband had been issued during the existence of his prior marriage and his wife of that earlier marriage had been designated as beneficiary. After his second marriage the group policy certificate was increased from $2,000.00 to $9,000.00 and all of the premiums were paid after that marriage out of community funds. The second wife was designated as the beneficiary of the policy, to whom the benefits were payable "if surviving the Employee, and otherwise to the estate of the Employee." The Texas Supreme Court concluded that since the facts of survivorship could not be proved, proceeds of the insurance policy should be deemed community effects under the statutory presumption that "all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as community effects or gains, unless the contrary be satisfactorily proved." The court reasoned:

"In our opinion it should be presumed that the payment of premiums by James Roe after his marriage to Edna I. Roe were made from community funds. *State v. Jones*, Tex.Civ.App., 290 S.W. 244, 250, reversed on other grounds, Tex. Com.App., 5 S.W.2d 973; *Martin v. Moran*, 11 Tex.Civ.App. 509, 32 S.W. 904, 906. Furthermore, the insurance was maintained by these payments and by his continuing to work as employee of the company insured by the group policy. The greater part of the insurance was procured after James Roe and Edna I. Roe were married. Whatever rights to the proceeds of the insurance might accrue to him as his separate property on account of his having procured the insurance for $2,000 before his marriage to Edna I. Roe

or by his payments of premiums before his marriage to her in our opinion passed to the community when, after his marriage to Edna I. Roe, he paid the premiums out of community funds, made her the beneficiary, and increased the amount of the insurance to $9,000. Under this state of facts the ownership of the proceeds of the certificate is to be determined in the same way as if the certificate had been issued after James Roe and Edna I. Roe were married and all premiums paid out of community funds." (262 S.W.2d 397)

Appellee contends that the case is controlled by the reasoning of *McCurdy v. McCurdy*, 372 S.W.2d 381 (Tex.Civ.App.—Waco, 1963, writ ref.). In that case, which was decided after the enactment of the Simultaneous Death provisions in the Texas Probate Code, but prior to the 1965 amendments, the husband had acquired two life insurance policies prior to his marriage which named his estate as beneficiary. Total premiums on the two policies in the amount of $10,094.66 were paid prior to marriage and $657.60 paid during coverture from community funds. Upon the husband's death his widow sought action against his executor to determine the status of the insurance proceeds. The court held that the proceeds of the policies constituted the separate estate of the deceased insured but that the community was entitled to reimbursement on the basis of the premiums paid with community funds. Through Justice Wilson the court stated at page 382:

"In *Brown v. Lee*, Tex., 371 S.W.2d 694, 7 S.Ct.J., 10, The Supreme Court said that by amendment of the definition of 'property' in Art. 23(1), Vernon's Ann.Tex. Stats., to include 'life insurance policies, and the effects thereof', the Legislature has 'aligned Texas with other community property states in adhering to the theory that the right to receive insurance proceeds payable at a future but uncertain date is "property." Such property is said to be in the nature of a chose in action which matures at the death of the in-

sured.' In that case, however, the policy was also issued during coverture.

"In approaching solution to this problem we must look somewhat beyond the immediate consequences of decision in this case. A dominant factor in our conclusion is an effort, within the broad principles of dissonant precedent, to fit life insurance proceeds under the present facts to the pattern of Texas community property law as applied to other types of property. This the Legislature has apparently sought to do by amending Art. 23, Sec. 1.

"That pattern, as to realty, title to which is acquired before marriage, and a portion of the consideration for which is thereafter paid from community, fixes the character of title at the time of its inception or acquisition. It 'depends upon the existence or nonexistence of the marriage at the time of the incipiency of the right in virtue of which the title is finally extended.' *Creamer v. Briscoe*, 101 Tex. 490, 109 S.W. 911, 912, 17 L.R. A.,N.S., 154, 130 Am.St.Rep. 869. In such a case as this, realty is held to be the husband's separate property. *Colden v. Alexander*, 141 Tex. 134, 171 S.W.2d 328, 334.

" . . .

"We think our decision harmonizes with what is said to be elsewhere the general rule: 'If either spouse before marriage procures a policy of life insurance on his own or another's life, in his favor or in favor of his estate, the policy and its proceeds are his separate property. His rights to the proceeds date from the policy.' McKay, Community Property (2d ed.) Sec. 479, p. 316. . . ."

The pertinent provisions of Section 47 of the Texas Probate Code, as amended in 1965, read as follows:

"(b) Disposal of Community Property. When a husband and wife have died, leaving community property, and there is no direct evidence that they have died otherwise than simultaneously, one-half of all community property shall be distributed as if the husband had survived, and the other one-half thereof shall be distributed as if the wife had survived. The provisions of this subsection apply to proceeds of life or accident insurance which are community property and become payable to the estate of either the husband or the wife, as well as to other kinds of community property.

"(e) Insured and Beneficiary. When the insured and a beneficiary in a policy of life or accident insurance have died and there is no direct evidence that they have died otherwise than simultaneously, the insured shall be deemed to have survived the beneficiary for the purpose of determining the rights under the policy of the beneficiary or beneficiaries as such. The provisions of this subsection shall not prevent the application of subsection (b) above to the proceeds of life or accident insurance which are community property."

In these amendments the legislature deviated from the amendment proposed by the National Conference on Uniform State Laws for the Uniform Simultaneous Death Act. The amendment proposed by the National Conference provided as follows:

"Section 5. Insurance Policies. Where the insured and the beneficiary in a policy of life or accident insurance have died and there is no sufficient evidence that they have died otherwise than simultaneously the proceeds of the policy shall be distributed as if the insured had survived the beneficiary, except if the policy is the community property of the insured, and his spouse, and there is no alternative beneficiary, or no alternative beneficiary except the estate or personal representatives of the insured, the proceeds shall be distributed as community property under Section 4."

Subsec. 4 of the Uniform Act corresponds with the first sentence of Subsec. 47(b) of our Texas Probate Code.

Appellant urges that the Texas legislature's deviation from the amendatory language proposed by the National Conference signifies legislative intent that the disposition of "proceeds" as community property should not be conditional upon the policy itself being community property. She urges that the application of Subsec. 47(b) is dependent upon the proceeds being community property and that by adding Subsection 47(e) the legislature indicated its intent that no presumption regarding survival would affect or determine disposition under Subsection 47(b) with respect to proceeds which are classified as community property.

It is appellee's contention, on the other hand, that Subsections (b) and (e) of Section 47 are applicable only if it is first determined that the policy proceeds "are community property" and the statute is silent as to what tests are to be employed in ascertaining whether the proceeds belong to one estate or the other.

In view of the Texas Supreme Court's outright refusal of application for writ of error in *McCurdy v. McCurdy*, supra, we believe the inception of title test must first be applied to determine whether the proceeds of insurance are owned by the separate or community property. In *Brown v. Lee*, 371 S.W.2d 694 (1963), the Texas Supreme Court speaking through Chief Justice Greenhill stated:

"When purchased with community funds, the ownership of the unmatured chose logically belongs to the community, unless it has been irrevocably given away under the terms of the policy, i. e., where the purchaser has, without fraud, foreclosed to change the named beneficiary . . . The proceeds at maturity are likewise community in character, except where the named beneficiary is in fact surviving, in which case a gift of the policy rights to such beneficiary is presumed to have been intended and completed by the death of the insured." 371 S.W.2d 696.

■ As reflected by the opinion in *McCurdy*, the policy in *Brown v. Lee* had been issued during marriage. Thus, the proceeds of the policy were as a consequence community. See also *Salvato v. Volunteer State Life Insurance Co.*, 424 S.W.2d 1 (Tex.Civ.App.—Houston [1st], 1968, no writ); *Amason v. Franklin Life Insurance Co.*, 428 F.2d 1144 (5th Cir. 1970). Since the policy in the case before us was separate in character, the trial court correctly determined the proceeds thereof to be separate. It also correctly concluded that the community's right to reimbursement for policy premiums paid out of community funds had been fully discharged by deduction of the outstanding loan indebtedness from the policy proceeds.

■ In her third point of error appellant contends that the trial court's finding that Jack Snow did not make any gift or other transfer of a property interest in the policy to Willie Alyce Snow is contrary to and inconsistent with the stipulated facts. We find no evidence in the stipulated facts which would preclude the trial court from making this finding.

In her fourth and last point appellant contends that the trial court erred in failing to find, as a matter of law, that the right of Willie Alyce Snow to receive the insurance proceeds was a property interest that matured on the death of the insured. We find it unnecessary to discuss this point in view of our determination of the first two points of error.

The judgment of the trial court is affirmed.