**Carol W. SEAMAN, Appellant,**

v.

**Margie B. SEAMAN, Appellee.**

**No. 9615.**

Court of Appeals of Texas,
Texarkana.

Aug. 2, 1988.

Mary Mansfield Craft, Houston, for appellant.

Robert L. Lipstet, Lipstet, Singer, Hirsch & Wagner, Houston, for appellee.

GRANT, Justice.

Carol W. Seaman, the widow and second wife of Colvin Seaman, appeals a judgment awarding life insurance proceeds of $68,000 to Margie Seaman, the former wife of Colvin Seaman.

Carol Seaman raises two points of error: (1) she contends that the trial court erred in denying her motion for judgment n.o.v. be-

cause the property settlement agreement incident to divorce (between Margie and Colvin Seaman) did not transfer any rights in the insurance policy or divest the decedent (Colvin Seaman) of his right to name a new beneficiary; (2) she contends alternatively that the trial court erred in denying her motion for judgment n.o.v. to recover the amount that the insurance policy benefit had increased in value since the date of the divorce.

Colvin Gregory Seaman was divorced from his first wife, Margie Seaman, in 1977. The agreement incident to divorce dividing the marital property contained the following provision:

### II.

Wife shall own, have and enjoy as her separate property and estate ... and wife is hereby vested with and husband is divested of all right, title and interest in and to the property and interest described on Schedule I.

### Schedule I

### Wife's Property

. . . .

10. All right, title and interest in and to any [1] insurance policies, *in effect at the time of date of separation,* March 1, 1977, *held or owned* by Colvin Gregory Seaman. (Emphasis added.)

At the time of the divorce (March 1977), Colvin Seaman's employer, the Houston Port Authority, provided him with an employee group life insurance policy with death benefits of $44,000. The amount of the insurance benefit was determined by his salary level.

After his divorce from Margie, Colvin Seaman married Carol in June, 1980, and named her as beneficiary of the insurance policy, replacing Margie. Colvin Seaman died in 1982, and the death benefit at that time was $68,000.[2] Philadelphia Life In-surance Company filed an interpleader action and deposited the policy proceeds into the registry of the court. The first and second wife each claimed the benefit. A summary judgment in favor of Margie Seaman that was granted in this case was reversed and sent back to the trial court in *Seaman v. Seaman,* 686 S.W.2d 206 (Tex. App.–Houston [1st Dist.] 1984, writ ref'd n.r.e.).

The trial court submitted a single special issue to the jury asking whether the husband intended for the first wife (Margie Seaman) to receive all increases in the life insurance benefits accrued after their divorce. The jury answered, "Yes." In accordance with the jury's verdict, the judgment provides that the first wife should recover the entire death benefit, plus interest, less attorney's fees payable to the interpleader.

The appellant contends that the trial court erred as a matter of law in rendering judgment based on its implicit finding that all rights under the policy have been transferred to the first wife. She contends that the 1977 property agreement did not transfer any rights in the policy to the first wife, because the policy was not held or owned by the husband. The first wife testified that the policy was taken out by the Houston Port Authority, that it was paid for by the Houston Port Authority, and that the husband did not make any contributions toward the insurance premium. The exhibits indicate that this policy was part of a group life insurance policy that was selected and purchased by the Houston Port Authority. The Houston Port Authority was issued the policy in 1964 and thereafter paid monthly premiums to the insurer based upon the employee coverage.

The first ambiguity in the language of the property settlement agreement is whether the phrase "held or owned by Colvin Gregory Seaman" refers to "right, title or interest" or to "insurance policies." We

---

**1.** The testimony indicated that Colvin Seaman struck out the word *my* in the agreement and wrote the word *any* in its place, which he in turned initialed.

**2.** The amount was 150% of his basic annual earnings, rounded off to the nearest $1,000, plus an additional $8,000 because he had been employed by the Houston Port Authority for more than five years.

have concluded that under either interpretation, the results would be the same. Certainly there is no question that Colvin Seaman had a right under the terms of the insurance policy in question. (Margie Seaman testified that this was the only life insurance policy in which Colvin Seaman had an interest.) Each employee was issued a certificate showing his coverage. The following provision of the policy explains each employee's rights:

BENEFICIARY DESIGNATION. Each Employee shall have the right to designate a Beneficiary upon becoming insured under this Group Policy and to revoke at any time any previous designation and make a new designation by giving through the Owner written notice to the Company at its Home Office. Such revocation and new designation shall take effect as of the date the Employee signed the notice, but without prejudice to the Company on account of any payment made by it before receipt of such notice.

▌ The testimony indicated that the Houston Port Authority was provided with a copy of the divorce decree and settlement agreement. A life insurance policy that is an incident of employment during marriage is community property. *Estate of Korzekwa v. Prudential Insurance Company of America,* 669 S.W.2d 775 (Tex.App.–San Antonio 1984, writ dism'd). This is true even if premiums are not deducted from the employee's salary because the policy is a benefit earned by employment. Even though the policy provides only for term insurance and has no cash value, it is still a property right that can be awarded to one of the spouses on divorce. *Teaff v. Ritchey,* 622 S.W.2d 589 (Tex.App.–Amarillo 1981, no writ). Furthermore, the right to receive insurance proceeds payable at a future but uncertain date has been defined by the Texas Supreme Court as property in the nature of a chose in action which matures at the death of the insured. *Brown v. Lee,* 371 S.W.2d 694 (Tex.1963).

▌ In the present case, although Seaman's company is shown as the legal owner, Seaman had the right to change the beneficiary on the policy; it was his life that was insured; and he could keep the insurance policy in effect by remaining employed by the company. Under these circumstances, even though the employer was the legal owner of the policy, Colvin Seaman and his first wife at the time of the divorce were the equitable owners of the policy. Thus, by the terms of the agreement incident to divorce, Margie Seaman received such ownership right as Colvin Seaman held in the policy, and Colvin Seaman, who had been divested of all right, title and interest, had no authority to change the beneficiary from Margie to Carol.

The appellant has cited a series of cases discussing the language requirements in a property division or for removing a spouse as a beneficiary of an insurance policy. *Nichols v. Nichols,* 727 S.W.2d 303 (Tex. App.–Beaumont 1987, writ ref'd n.r.e.); *Parker v. Parker,* 683 S.W.2d 889 (Tex. App.–Fort Worth 1985, writ ref'd); *Gillespie v. Moore,* 635 S.W.2d 927 (Tex.App.–Amarillo 1982, writ ref'd n.r.e.). In the *Nichols* case, the court was dealing with a situation in which the spouse was awarded all right, title and interest in and to the cash surrender value of an insurance policy. The *Parker* case dealt with a situation in which one spouse was awarded all right, title and interest to a life insurance policy, but failed to remove his ex-spouse as a beneficiary. The *Gillespie* case dealt with specific language in the property settlement agreement providing that the husband not only receive all the interest and equities in the policy, but also "the proceeds thereof, and agrees that she (the wife) will in no event ever claim any interest in any of the policies or the proceeds thereof." The court concluded that this specifically divested the wife of her rights as a beneficiary under the policy. None of these cases are applicable to the facts set forth in the present case. We do not have to reach the question of whether the property settlement agreement made Margie Seaman the right beneficiary, because she was already the beneficiary of the policy, and Colvin Seaman was divested of the right to change the beneficiary.

Next, we address the issue involving the increase in the value of the policy benefit after the date of the divorce. The court in *Seaman v. Seaman, supra,* determined the law of this case to be that an ambiguity exists as to whether the parties intended the language in the property settlement agreement to cover future increases. The evidence shows that such increases were made based upon the earning level which an employee attained, as well as his tenure with the company. The jury made a determination that Colvin Seaman intended for his first wife, Margie Seaman, to receive all increases in the life insurance benefit that accrued after the divorce. The fact that Margie Seaman also intended the agreement to have that meaning is undisputed. As we held in *Crumley v. Crumley,* 753 S.W.2d 417, (Tex.App.–Texarkana, 1988), the trial court has authority to divide only property belonging to the community at the time of the divorce. Increases in the insurance benefits that resulted from Colvin Seaman's employment during the second marriage would be community property of the second marriage or could be construed to be enhancements to the first wife's asset, for which reimbursement could be obtained. *See Berry v. Berry,* 647 S.W.2d 945 (Tex.1983) (this case applies this rationale to retirement benefits), and *Hudspeth v. Stoker,* 644 S.W.2d 92 (Tex. App.–San Antonio, 1982 writ ref'd) (in this case the face amount of the policy was specifically stated in the property settlement agreement). These legal principles would be applicable if the case involved only a court ordered division.

The property settlement agreement, however, is more than the court's dividing of property. As stated in the agreement, it creates a contractual obligation. Such an agreement is enforceable under the law of contracts. *Smith v. Smith,* 595 S.W.2d 631 (Tex.Civ.App.–Fort Worth 1980, no writ); *Bragdon v. Bragdon,* 594 S.W.2d 561 (Tex.Civ.App.–Amarillo 1980, writ ref'd n.r.e.). Certainly Colvin Seaman's separate property was subject to contractual obligations. Pursuant to Tex.Fam.Code Ann. § 5.61(c) (Vernon 1975), community property (in this case, of the second community) subject to a spouse's sole or joint management, control and disposition is subject to the liabilities incurred by him before the marriage. According to Black's Law Dictionary, the word *liability* is a broad legal term that includes all character of debts and obligations, and we believe that it would include such a contractual obligation as Colvin Seaman contracted for in the agreement incident to divorce.

The judgment of the trial court is affirmed.