ACCEPTED
03-14-00435-CV
3637800
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/2/2015 2:20:49 PM
JEFFREY D. KYLE
CLERK

**No. 03-14-00435-CV**

_____

**IN THE COURT OF APPEALS**
**FOR THE THIRD DISTRICT OF TEXAS**
**AT AUSTIN**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/2/2015 2:20:49 PM
JEFFREY D. KYLE
Clerk

_____

**LESLIE OTIS ROLLS, JR.**

**Appellant**

**v.**

**SUSAN D. ROLLS and**
**TERRI H. MOTL**

**Appellees**

_____

**On Appeal from the 51st District Court of Coke County, Texas**
**The Honorable Barbara Walther, Judge Presiding**
_____

**APPELLANT'S REPLY BRIEF**
_____

**Chad M. Ruback**
**State Bar No. 90001244**
**chad@appeal.pro**
**The Ruback Law Firm**
**8117 Preston Road**
**Suite 300**
**Dallas, Texas 75225**
**(214) 522-4243**
**(214) 522-2191 fax**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    1.     ARGUMENT RELATED TO ISSUE 1:
Otis purchased his life insurance policy long before marrying Susan.
Consequently, the life insurance policy is Otis's separate property.  By
awarding Susan some of Otis's separate property, the trial court committed
reversible error. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    2.     ARGUMENT RELATED TO ISSUE 2:
There is no evidence or insufficient evidence that $10,458 was a reasonable
and necessary attorneys' fee. Consequently, the trial court abused its discretion
in awarding $10,458 in attorneys' fees.. . . . . . . . . . . . . . . . . . . . . . . . . . . 11

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# INDEX OF AUTHORITIES

*Barnett v. Barnett*,
67 S.W.3d 107
(Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*City of San Antonio v. Lopez*,
754 S.W.2d 749
(Tex. App.—San Antonio 1988, writ denied). . . . . . . . . . . . . . . . . . . . . 8, 9

*Harrison v. City of San Antonio*,
695 S.W.2d 271
(Tex. App.—San Antonio 1985, no writ). . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Nichols v. Nichols*,
727 S.W.2d 303
(Tex. App.—Beaumont 1987, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . 6, 7

*Pritchard v. Snow*,
530 S.W.2d 889
(Tex. Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). . . . . . . . . . 4, 5

*Seaman v. Seaman*,
756 S.W.2d 56
(Tex. App.—Texarkana 1988, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . 3, 4

## SUMMARY OF THE ARGUMENT

Otis purchased his life insurance policy long before marrying Susan. Consequently, the life insurance policy is Otis's separate property. By awarding Susan some of Otis's separate property, the trial court committed reversible error.

There is no evidence or insufficient evidence that $10,458 was a reasonable and necessary attorneys' fee. Consequently, the trial court abused its discretion in awarding $10,458 in attorneys' fees.

## ARGUMENT

1. **ARGUMENT RELATED TO ISSUE 1: Otis purchased his life insurance policy long before marrying Susan. Consequently, the life insurance policy is Otis's separate property. By awarding Susan some of Otis's separate property, the trial court committed reversible error.**

In Susan's appellate brief, she acknowledges that Otis bought the life insurance policy at issue long before he married Susan. [Ee brief pp. 1-2] (acknowledging that Otis bought the policy in 1989, but that Otis did not marry Susan until 2002) She also acknowledges the Texas Supreme Court's *Barnett* case, which holds that whether a life insurance policy is community property or separate property should be determined by the "inception of title" rule. *See Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2002) (**holding that, if a life insurance policy was separate property at the time it was issued, it will remain separate property**). [Ee brief p. 7] However, Susan argues that *Barnett* and the "inception of title" rule do not apply to this case—and that it does not matter whether the policy at issue was separate or community property—because the trial court did not award Susan the policy itself but merely awarded her half the value of the policy. [Ee brief pp. 6-8]

Under Susan's reasoning, if Otis owned a house that was 100% separate property, it would be okay for a court to award Susan 50% of the value of the house . . . as long as the court did not award the house itself. Susan's reasoning would

2

effectively make meaningless: (1) the Texas Supreme Court's *Barnett* holding; (2) the "inception of title" rule; and even (3) the concept of separate property. Following Susan's reasoning, it would be proper for a court to award a wife 50% of the value of the husband's separate property possessions . . . as long as the court did not award the separate property possessions themselves. Of course, that flies in the face of Texas separate property law.

Susan cites cases from the Texarkana Court of Appeals, the First District Court of Civil Appeals, and the Beaumont Court of Appeals in support of her argument that the Texas Supreme Court's *Barnett* case should be disregarded. [Ee brief pp. 5-6]

First, Susan cites the Texarkana Court of Appeals *Seaman* case. *Seaman v. Seaman*, 756 S.W.2d 56 (Tex. App.—Texarkana 1988, writ ref'd n.r.e.). [Ee brief p. 5] Susan claims that the Texarkana Court "held that increases made to a life insurance policy during marriage are community property." [Ee brief p. 5] Susan is mistaken. *Seaman* simply does not hold that increases in value of a life insurance policy during marriage are community property. In fact, in *Seaman*, "the policy provide[d] only for term insurance and ha[d] no cash value" whatsoever. *Id.* at 58. That alone would make *Seaman* inapplicable to this case, where the issue is the propriety of the trial court awarding half the cash value of a policy.

Moreover, the policy at issue in *Seaman* was not even owned by either party to the marriage, but rather was owned by the husband's employer. *Id.* ("the employer was the legal owner of the policy"). That alone would also make *Seaman* inapplicable to this case, where the issue is whether the life insurance policy was the husband's separate property or was the couple's community property. At issue in *Seaman* was whether a court could require a husband to leave the beneficiary of a life insurance policy unchanged. *Id.* Of course, the trial court in this case did not make any such order, but rather ordered Otis to pay Susan half the value of his (separate property) life insurance policy. [CR 214]

Second, Susan cites the First District Court of Civil Appeals *Pritchard* case. *Pritchard v. Snow*, 530 S.W.2d 889 (Tex. Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). [Ee brief pp. 5-6] Susan claims that the First District Court held "that a wife had a claim against her husband's separate property life insurance policy acquired before marriage because community funds were used to pay premiums and maintain the policy during the marriage." [Ee brief pp. 5-6] It is unclear exactly what Susan is suggesting, but *Pritchard* does not hold that a wife has a claim to her husband's separate property life insurance policy based on community funds having been used to pay the premiums during the marriage.

4

Rather, *Pritchard* holds that a wife would have a "right to reimbursement for policy premiums paid out of community funds." *Id.* at 893. As pointed out in Otis's appellate brief, Texas law recognizes a wife's right of reimbursement for her share of premiums paid during a marriage with community funds. [Ant brief p. 4] However, the trial court in this case did not award Susan reimbursement for her share of premiums paid during the marriage with community funds (i.e., an award of half of the premiums paid during the marriage), but rather expressly awarded Susan half the total value of the life insurance policy.[1] [CR 214; Ant brief pp. 4-5] Moreover, even if the trial court had awarded Susan reimbursement for her share of life insurance premiums paid during the marriage with community funds, that would still constitute reversible error because the Texas Supreme Court has held that a party is only entitled to reimbursement if the party expressly pleads for reimbursement . . . and Susan did not plead for reimbursement. [Ant brief p. 4 n.2]

---

[1] In addition to the trial court's express language awarding Susan half the total value of the policy, [CR 214] the amount awarded by the trial court is consistent with an award of half the total value of he policy. Specifically, the trial court specified that its award shall be no less than $8,390, [CR 214] which is approximately half the policy's $16,782 total value. [Ee brief pp. 2-3; CR 104; RR vol. 2 p. 57] The premiums paid during the marriage totaled only $7,381 [CR 214; RR vol. 2 p. 177] . . . so Susan's share of premiums paid during a marriage would have been only $3,690.50.

5

Notably, *Pritchard* specifies that "the inception of title rule must . . . be applied to determine. . . separate or community property." *Id.* at 893. In light of *Pritchard* applying the "inception of title" rule, it is curious that Susan would rely upon *Pritchard* . . . as she argues that the "inception of title" rule should not be applied here. [Ee brief p. 7] Additionally, it is curious that Susan would rely upon *Pritchard* in light of the fact that *Pritchard* held that the insurance policy at issue constituted separate property and that all proceeds therefrom (e.g., the proceeds of a cash surrender of the policy) would also be separate property. *Id.* at 893 ("Since the policy in this case before us was separate in character, the trial court correctly determined the proceeds thereof to be separate.")

Third, Susan cites the Beaumont Court of Appeals *Nichols* case. *Nichols v. Nichols*, 727 S.W.2d 303 (Tex. App.—Beaumont 1987, writ ref'd n.r.e.). [Ee brief p. 6] Susan claims that the Beaumont Court "found that a trial court could award a portion of the cash surrender value of a life insurance policy to one spouse without divesting the other spouse of the right to receive life insurance proceeds in the future." [Ee brief p. 6] That might be true, but it is completely irrelevant to the issue at hand.

While it would indeed be possible to award a wife a portion of the cash surrender value of a life insurance policy without divesting the husband of the right

6

to receive life insurance proceeds, this does not address whether it is appropriate to award a wife a portion of the cash surrender value of a life insurance policy **when the life insurance policy is the husband's separate property**. The *Nichols* opinion does not address the propriety of the award itself. This is not surprising, as under the "inception of title" rule, the insurance policy in that case was community property . . . the policy having been purchased during the marriage. *See id.* at 304 ("The evidence showed that Nichols and his former wife married in 1963 and purchased the policy at issue in 1964. . . . They divorced on May 19, 1977."). Dissimilarly, Otis purchased his life insurance policy prior to the marriage and, under the "inception of title" rule, that would make the policy his separate property.

After making arguments (mistakenly) relying upon the *Seaman*, *Pritchard*, and *Nichols* cases, Susan proceeds to rely upon Otis's (mistaken) belief in the trial court that a portion of the policy was community property. [Ee brief p. 8] In his appellate brief, Otis cited numerous cases holding that a party's belief about how the law would apply (e.g., to make something separate property or community property) is irrelevant to how the law actually does apply. [Ant brief p. 6 and n.4] Oddly, Susan does not address any of those cases . . . or cite any legal authority which would support her reliance upon Otis's mistaken belief that a portion of the policy was community property.

7

Rather, Susan makes the conclusory claim that "trial-by-consent supports the trial court's award" to Susan. [Ee brief p. 8] But Susan offers no explanation whatsoever of how the concept of trial-by-consent applies to this case. Instead, she leaves Otis (and this Court) to guess at how the concept of trial-by-consent might apply to this case.

In support of her conclusory claim that the concept of trial-by-consent supports the trial court's award, Susan cites two cases. [Ee brief p. 8] The two cases cited by Susan indicate that the concept of trial-by-consent serves to permit a party to recover on a theory that the party failed to plead. *See City of San Antonio v. Lopez*, 754 S.W.2d 749, 751 (Tex. App.—San Antonio 1988, writ denied); *Harrison v. City of San Antonio*, 695 S.W.2d 271, 278 (Tex. App.—San Antonio 1985, no writ). What unpleaded issue is Susan suggesting was tried by consent? Otis (and this Court) can only guess.

Otis's brief mentioned a pleading issue only once, and that mention was merely as an interesting side note. Specifically, Otis's brief noted that the trial court in this case did not award Susan reimbursement for her share of premiums paid during the marriage with community funds, but rather expressly awarded Susan half the total value of the life insurance policy. [Ant brief pp. 4-5] Then, as a side note, Otis's brief observed that even if the trial court had made an award of

8

reimbursement—which it did not—this would have been inappropriate because Susan never pleaded for reimbursement. [Ant brief p. 5 n.2]

If, by citing the two trial-by-consent cases, Susan is suggesting that the trial court did award her reimbursement and that she didn't need to plead reimbursement because the issue was tried by consent, she would have at least four problems. First, as the two trial-by-consent cases cited by Susan both emphasize, trial-by-consent can only apply "when the record makes it clear that the parties understood the non-pleaded matter to be an issue in the case." *Lopez*, 754 S.W.2d at 751; *see Harrison*, 695 S.W.2d at 278 (trial-by-consent "is intended to cover the exceptional case where it clearly appears from the record as a whole that the parties tried the unpleaded issue."). The record in this case in no way makes clear that Otis understood that Susan was asserting a reimbursement claim . . . rather than merely a claim for a portion of the value of the policy itself. Second, as noted above, Otis's mistaken belief about how the law would apply (to make something separate property or community property) is irrelevant to how the law actually does apply. [Ant brief p. 6 and n.4] Third, the trial court in this case simply did not award Susan reimbursement for her share of premiums paid during the marriage with community funds, but rather expressly awarded Susan half the total value of the life insurance policy. [CR 214] Fourth, while the trial court's decree specifies that its award of half

9

the cash surrender value of the policy shall not be less than $8,390, the uncontroverted evidence is that the premiums paid during the marriage totaled only $7,381. [CR 214; RR vol. 2 p. 177; Ant brief p. 7 n.5] So, even if one were to accept Susan's invitation to disregard the Texas Supreme Court's "inception of title" rule, there would still be no basis for awarding Susan reimbursement of $8,390, as premiums paid during the marriage totaled only $7,381. And even an award of $7,381 to Susan would be erroneous because that would constitute an award of all premiums paid during the marriage rather than merely Susan's share of premiums paid during the marriage.

As to the $7,381 figure, Otis testified that $7,381 was the total amount of premiums paid during the marriage. [CR 214; RR vol. 2 p. 177; Ant brief p. 7 n.5] Susan argues that there is "no supporting documentation or testimony explaining how this figure was generated." [Ee brief p. 9] Yet Susan has offered no evidence—or even argument—that more than $7,381 was paid in premiums during the marriage. If Susan had pleaded for reimbursement (or if reimbursement were somehow tried by consent), it would seem that Susan would have needed to prove her reimbursement claim . . . including the amount of reimbursement to which she was entitled. Yet Susan has offered no evidence—or even argument—that more than $7,381 was paid in premiums during the marriage.

Next, Susan argues that "there is no evidence in the record reflecting that the entire Midland Life Insurance Policy is separate property." [Ee brief p. 8] In fact, there is uncontroverted evidence that the policy was separate property. Specifically, as explained above, the Texas Supreme Court held in *Barnett* that whether a life insurance policy is community property or separate property should be determined by the "inception of title" rule . . . and the uncontroverted evidence establishes that Otis acquired the policy long before he married Susan.

Finally, Susan argues that "there was no evidence presented as to any cash surrender value of the Midland Life Insurance Policy before the marriage or at the time of the marriage." [Ee brief p. 9] But the value of the policy before the marriage, during the marriage, or after the marriage is simply irrelevant. Specifically, under the Texas Supreme Court's "inception of title" rule, because Otis acquired the policy before the marriage, 100% of the policy's value is his separate property.

2.  **ARGUMENT RELATED TO ISSUE 2: There is no evidence or insufficient evidence that $10,458 was a reasonable and necessary attorneys' fee. Consequently, the trial court abused its discretion in awarding $10,458 in attorneys' fees.**

The trial court awarded Susan's counsel Terri Motl $10,458 in attorneys' fees. [CR 215] Terri argues—without any explanation—that her "detailed billing statements reflect the amount $10,458 was a reasonable and necessary attorney' fee."

11

[Ee brief p. 10] Terri is mistaken. While Terri's billing statements reflect that $10,458 was the amount she charged Susan, the billings statements are silent as to (1) whether that amount of fees was a reasonable amount and (2) whether that amount of fees was necessary. [RR vol. 4 Px 10]

Next, Terri claims—without explanation—that "trial-by-consent supports the award of attorneys fees." [Ee brief pp. 10-11] In support of this claimzz, Terri cites the same two cases cited earlier in the Appellees' brief which establish that Texas law recognizes the concept of trial-by-consent (which, in very limited circumstances permits unpleaded matters to be adjudicated in spite of their not having been pleaded). [Ee brief pp. 8, 11] But, as before, Terri offers no explanation whatsoever of how the concept of trial-by-consent applies to this case.

Instead, she leaves Otis (and this Court) to guess at how the concept of trial-by-consent might apply to this case. In his appellate brief, Otis never claimed that Terri failed to plead entitlement to attorneys' fees. Rather, Otis argued that Terri failed to offer sufficient evidence in support of the amount of attorneys's fees. [Ant brief pp. 8-11] Otis pointed out that no expert—not Terri and not any other attorney—offered testimony about attorneys' fees. [Ant brief p. 9]

Oddly, Terri makes no attempt to address Otis's arguments that:

12

(1) For an attorneys' fee award to stand, there must be expert testimony that the attorneys' fees were reasonable. [Ant brief p. 9]

(2) For an attorneys' fee award to stand, there must be evidence of the attorney's qualifications. [Ant brief p. 9]

(3) While Terri's invoices are in the same amount ($10,458) as awarded to her by the trial court, her invoices reflect that a portion of that amount was for fees of non-lawyers who work for Terri . . . but non-lawyer staff fees are only recoverable in very limited situations, none of which are supported by the record here. [Ant brief pp. 10-11]

## **PRAYER**

Otis respectfully prays that this Court reverse the trial court's judgment, render judgment that the life insurance policy is his separate property, that Susan is not entitled to any portion of the policy's cash surrender value, and that neither Terri nor Susan is entitled to an award of attorneys' fees. Otis also prays for his costs and for all other relief to which he may be entitled.

13

Respectfully submitted,

/s/ Chad M. Ruback
Chad M. Ruback
State Bar No. 90001244
chad@appeal.pro
The Ruback Law Firm
8117 Preston Road
Suite 300
Dallas, Texas 75225
(214) 522-4243
(214) 522-2191 fax

## CERTIFICATE OF COMPLIANCE

I certify that, according to my word processor's word-count function, in the sections of this brief covered by TRAP 9.4(i)(1), there are 2,930 words.

/s/ Chad M. Ruback
Chad M. Ruback

## CERTIFICATE OF SERVICE

I hereby certify that, on January 2, 2015, I served a copy of this Appellant's Reply Brief to the following counsel for Appellees:

Terri H. Motl
202 W. Beauregard Avenue
Suite E
San Angelo, Texas 76093

/s/ Chad M. Ruback
Chad M. Ruback